**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAP-SUN CHAN<br>Plaintiff,<br><br>-against-<br><br>WIZARDS OF THE COAST, LLC<br><br>Defendants. | C.A. NO. 1:26-CV-04680 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**

Akiva M. Cohen, Esq.
1700 Broadway, 16th Floor
New York, New York 10019
Tel: (212) 400 – 4930
Fax: (866) 221 – 6122
acohen@kusklaw.com

# Table of Contents

## Contents

I. PRELIMINARY STATEMENT ....... 1

II. STATEMENT OF FACTS ....... 3

III. ARGUMENT ....... 8

A. The Applicable Standard Does Not Require the Court to Accept as True Plaintiff's Implausible Allegations, and the Complaint Should be Dismissed for Failure to State a Claim ....... 8

B. Plaintiff Fails to Plausibly Allege Copyright Infringement ....... 8

IV. CONCLUSION ....... 16

# Table of Authorities

**Cases**


*Adams v. Warner Bros. Pictures Network*, No. 05 Civ. 5211, 2007 WL 1959022 (E.D.N.Y. June 29, 2007) .... 9

*Allen v. WestPointPepperell, Inc.*, 945 F.3d 40 (2d Cir. 1991) .... 8

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .... 8

*BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, No. 09 Civ. 1783, 2010 WL 2802153 (S.D.N.Y. July 14, 2010) .... 9

*Batts v. Adams*, 2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) .... 12

*Berg v. M&F W. Prods., Inc.*, No. 6:19-CV-00418-JDK, 2021 WL 2646223 (E.D. Tex. June 28, 2021) .... 9

*Boisson v. Banian, Ltd*, 273 F.3d 262 (2d Cir. 2001) .... 13

*Burnette v. Carothers*, 192 F.3d 52 (2d Cir. 1999) .... 8

*Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322 (S.D.N.Y. 2021) .... 11

*Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017) .... 12

*Freeman v. Deebs-Elkenaney*, 823 F. Supp. 3d 402 (S.D.N.Y. 2026) .... 13, 14

*Garber v. Legg Mason, Inc.,* 537 F. Supp. 2d 597 (S.D.N.Y. 2008) .... 10

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir. 1988) .... 11

*Gray v. Perry*, No. 215CV05642CASJCX, 2018 WL 3954008 (C.D. Cal. Aug. 13, 2018) .... 12

*Hogan v. DC Comics*, 48 F. Supp. 2d 298 (S.D.N.Y. 1999) .... 15

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003) .... 9, 12

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) .... 12

*Lewinson v. Henry Holt and Co., LLC*, 659 F. Supp. 2d 547 (S.D.N.Y. 2009) .... 13

*Miller v. Donald*, 541 F.3d 1091 (11th Cir. 2008) .... 10

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500 (S.D.N.Y. 2008) .... 12

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010) .... 13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406 (2d Cir. 2008) .... 10

*Wager v. Littell*, 549 F. App'x 32 (2d Cir. 2014) .... 11

*Walker v. Time Life Films, Inc.*, 784 F.2d 44 (2d Cir. 1986) .... 13

*Webb v. Stallone*, 910 F. Supp. 2d 681 (S.D.N.Y. 2012) .... 11

*Williams v. Crichton*, 84 F.3d 581 (2d Cir. 1996) .... 13

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) .... 8

Defendant Wizards of the Coast, LLC ("Wizards")[1] respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Lap-Sun Chan's ("Plaintiff") Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. PRELIMINARY STATEMENT

As discussed in Defendant's separate motion for Rule 11 sanctions, Plaintiff, who also goes by the name Kenneth Eng, is a serial frivolous litigant who has had more than two dozen cases dismissed under both names, including, for example, for suing a doctor for $1,000,000 because he thought the staff was rude,[2] and larding a complaint with vile racist slurs and antisemitic language.[3] Plaintiff's Complaint against Wizards is par for the course.

Plaintiff has sued Wizards for $10M because he believes he created and exclusively owns the idea for a "wereshark" and that Wizards has infringed upon his creation. By way of relevant background, lycanthropic monsters – werewolves and the like – have been found in folklore and fiction since antiquity. Hundreds of years before the Common Era, Herodotus wrote of the Neuri, a tribe northeast of Scythia that would reportedly transform into wolves for several days once a year. Herodotus, *The Histories*, 4.105 (circa 440 BCE). Werewolves continued to appear in folklore from antiquity through modern times, and across a wide range of cultures. *See*, *e.g.*, Pausanias, *Description of Greece*, 8.2 (circa 160-180 CE); Ovid, *The Metamorphoses*, I 219-239 (circa 8 CE); Pliny the Elder, *Natural History*, VIII.34 (circa 77 CE); Augustine, *The City of God*, XVIII.17 (circa 426 CE); King Canute, *Ecclesiastical Ordinances*, c. 26 (circa 1020 CE); Anonymous, *The Tale of Igor's Campaign* (circa late 1100s) (Slavic folklore); Marie de France, *Bisclavret* (circa 1200); *Völsungasaga*, ch. 8 (circa 1250 CE) (Nordic folklore). Bram Stoker depicted Dracula as a werewolf in *Dracula's Guest*. Werewolves

---

[1] Plaintiff Lap-Sun Chan named "Dungeons and Dragons Wizards of the Coast LLC" as the Defendant, but Dungeons and Dragons is a game published and owned by Wizards of the Coast, LLC, not a distinct entity.

[2] *See Chan v. Ramdhaney*, Case No. 1:22-cv-03708 (S.D.N.Y 2022)

[3] *See Eng v. Podolnick*, No. 1:14-cv-04675 (S.D.N.Y 2014) (dismissed for failure to comply with order requiring Plaintiff to "file an amended complaint not containing the stricken portions or any other racist, anti-Semitic, or insulting language").

came to the silver screen first in *Werewolf of London* (1935) and then Lon Chaney's definitive performance in *The Wolf Man* (1941), and have essentially never left it since. And animal shapeshifting has not been limited to wolves. Greek mythology is replete with humans (or human-shaped gods) who transform into animals or monsters. In Tlingit folklore, Kóoshdaa are were-otters. Celtic mythology includes selkies (were-seals) and kelpies (shape-shifting water-horses that live in lochs). DC Comics has featured numerous shark-human hybrids since its Silver Age, including Guppy (a small-time criminal in Nightwing's rogues' gallery, first appearance in 2018), King Shark (the son of a shark god and a human mother, first appearance in 1994), and Karshon (a mutated shark, first appearance in *Green Lantern* 24, October 1963). Other examples abound.

It is against this background that Plaintiff brings his Complaint, and with respect to which his claims of both copyright and infringement must be assessed. According to the Complaint, in Spring 2016, Plaintiff developed the idea of a wereshark that would rise when Neptune was in the sky, deriving its strength from Neptune's light; Plaintiff's creature had impenetrable shredding skin, could unleash lightning from all over its body, and was vulnerable only to magnets (the "Chan Wereshark"). Complaint, at 2. The Chan Wereshark cannot shift forms; it is a human-animal hybrid, with a humanoid body and shark head. Complaint, Ex. A at 2 ("2 – They can never transform into human form …").

Plaintiff alleges that Wizards infringed his copyright in the Chan Wereshark in four publications: (1) in the Fifth Edition of *The Pirate Campaign Compendium,* a "pirate manual"; (2) on the *Tribality* website, describing a wereshark with "electrosensitivity"; (3) in a *Pathfinder* manual describing weresharks as dealing bludgeoning damage; and (4) on the 5esrd.com website, describing weresharks as resistant to necrotic damage. Complaint at 3-4. According to Plaintiff, Wizards must have been able to copy his Chan Wereshark by virtue of someone hearing him shout details of the Chan Wereshark out his open window in 2016. Complaint at 4. Plaintiff contends it is "highly

unlikely" that anyone but him could have created the idea. *Id.* As detailed below, there are obvious, extensive, and insuperable problems with Plaintiff's claims.

First, linear time. Dungeons & Dragons ("D&D") first published its own wereshark concept in *1983*, more than 30 years before Plaintiff even conceived of the Chan Wereshark.[4] Though the Court cannot consider facts beyond the pleadings on this motion, and therefore the *specific details* of that timeline are addressed only in Wizards' Rule 11 motion, Plaintiff's Complaint includes facts making D&D's prior incorporation of weresharks clear: the *Tribality* website page Plaintiff complains of was published in 2015, the year before Chan claims to have come up with the Chan Wereshark. Additionally, Plaintiff's allegations suffer from an equally fundamental problem: none of the allegedly infringing publications identified by Plaintiff were made by Wizards: 5esrd.com and tribality.com are third-party websites that contain homebrew[5] and third-party creations for D&D alongside official Wizards content. Similarly, both *The Pirate Campaign Compendium* and *Pathfinder* are published by entirely different companies in the tabletop role-playing game space, Legendary Games and Paizo. Finally, as to substance, Plaintiff has not plausibly alleged either access or the requisite similarity to render a copyright claim plausible.

Like Plaintiff's other litigation, this Complaint is patently frivolous and its failure to state a claim for copyright infringement is apparent on its face. The Court should dismiss it.

## II. STATEMENT OF FACTS

Plaintiff is an individual residing in Flushing, New York. Complaint, ¶ 1. Defendant Wizards, incorrectly named in the Complaint as "Dungeons and Dragons Wizards of the Coast LLC," is a

---

[4] At the time, Dungeons & Dragons was owned by Wizards' predecessor-in-interest, TSR, Inc.

[5] In tabletop role-playing games, "homebrew" refers to any custom content, rules, settings, or adventures created by players or Game Masters(those running the game) instead of using official, published materials from a game company. Wizards allows third parties to create their own content for D&D, and Dungeons and Dragons accordingly has a thriving community of players and fans who produce a prodigious amount of such content.

limited liability corporation with its principal place of business located in Renton, Washington, and publisher of the tabletop role-playing game Dungeons & Dragons. Complaint, ¶ 2.[6]

In May or June 2016, Plaintiff allegedly conceived of an idea for his version of a wereshark: a non-shifting human-shark hybrid that "gains strength whenever Neptune is in the sky," has impenetrable skin that can shred metal and that makes it immune to disease, can generate electric fields and "discharge lightning bolts from all over its body, including its dorsal fin," and is vulnerable only to magnets. Complaint, ¶ 3. The Chan Wereshark cannot shift forms, Complaint, Ex. A at 2, Ex. B, and cannot speak. *Id.* Chan alleges that while in pain from a medical condition, he "shout[ed] his idea out loud" with his windows open, Complaint at 2,[7] and speculates that "a random person outside the window [must have] overheard the idea," told his friends, and eventually the idea was transmitted to Wizards. Complaint at 4.

Plaintiff alleges that in October 2016, he published a pamphlet detailing his ideas; the URL Plaintiff provided, https://www.amazon.com/~/es/genghis-forever/dp/1539540987, leads only to an error page.[8] *See* Complaint at 2; Declaration of Akiva M. Cohen ("Cohen Dec"), Ex. 1. Plaintiff registered his copyright in the October 2016 pamphlet. Complaint, at 2 & Ex. C. The copyrighted pamphlet, which Plaintiff attached to the Complaint as Exhibit B, does not mention immunity to disease or lightning weapons. Complaint, Ex. B. Plaintiff claims that in November 2016, he published "Were (3rd Edition)." Complaint, at 2. The webpage at the URL Plaintiff provided for that work, which is too long to copy here, indicates that this work is out-of-print. Cohen Dec Ex. 2. Plaintiff did not copyright that publication. Plaintiff alleges that in 2017 he published a novel titled

---

[6] Plaintiff alleges that "[t]he defendant is Dungeons and Dragons, which is under the company Wizards." Complaint, ¶ 2. The Court may take judicial notice that Dungeons & Dragons is a product published by Wizards, not a separate entity, and should construe Plaintiff's allegation in that manner. Fed. R. Civ Proc. 201(b)(2).

[7] At the start of page 2, Plaintiff's Complaint abruptly stops using numbered paragraphs. Citations to the Complaint are therefore to paragraphs only where Plaintiff used numbered paragraphs, and are otherwise to pages.

[8] The URL is referenced and relied upon in the Complaint, and the information on the page it directs to may therefore be considered on this motion. *See Mockingbird 38, LLC v. Int'l Bus. Times, Inc.*, No. 21-CV-283 (LJL), 2022 WL 154137, at *4 n.4 (S.D.N.Y. Jan. 18, 2022) (collecting cases).

*Weredragons and Other New Monsters*, which he did not copyright, and which is available on Amazon. Complaint at 2-3. A compendium of every mention of the Chan Wereshark in *Weredragons and Other New Monsters* is annexed to the Cohen Dec as Ex. 3; as with the prior works, it makes no mention of immunity to disease or lightning weapons. In 2019, Plaintiff obtained a copyright for a 2018 work titled *Neodragons*, Complaint at 3 and Ex. E, which, according to Plaintiff, "outlined the entire world of the wereshark." Complaint at 3. Plaintiff identifies nowhere other than the United States Copyright Office as a location at which that work is available. *Id.* In January 2022, Plaintiff uploaded a short film, *Wereshark: Neptunerise* ("*Neptunerise*"), to YouTube. Complaint, at 3. *Neptunerise* depicts the Chan Wereshark as a shambling, muscular humanoid with a shark head and incapable of speech, invulnerable to bullets but vulnerable to magnets; it does not mention immunity to disease or lightning weapons. Cohen Dec, ¶ 5.[9] Plaintiff generally published his print works on Createspace, Complaint, at 5, a self-publishing print-on-demand service that was owned by Amazon until it was shut down in 2018.

Plaintiff alleges that his copyright is infringed in the following ways. First, by the *Pirate Campaign Compendium*, which Plaintiff alleges was published on June 25, 2022.[10] Complaint, at 3 and Ex. F. Plaintiff does not provide any specifics about what, if anything, in the *Pirate Campaign Compendium* infringes his copyrighted work. Complaint at 3. As reflected on Exhibit F to the Complaint, the *Pirate Campaign Compendium* is "from Legendary Games," not Wizards. Complaint, Ex. F (in addition to the detail in the Amazon blurb, the image of the book's cover includes the Legendary Games logo in the bottom right corner). Plaintiff also alleges that his copyright is infringed by an October 2015 (*i.e.*, before Chan alleges his idea was created in 2016) description

[9] Because *Neptunerise* was referenced in the Complaint, the Court can and should view the 7-minute film for itself; the description in the Cohen Declaration is submitted for the Court's convenience.

[10] The copyright information on the 5esrd.com webpage identified in Plaintiff's Complaint identifies the *Pirate Campaign Compendium* as having been published in 2018.

published on the website *Tribality*, which describes weresharks as having "Electrosensitivity," an ability that grants them blindsight (the ability to see other than via the eyes) unless disrupted by lightning damage, complaining that it is a copy of the Chan Wereshark's ability to generate lightning bolts. Complaint at 3. The Chan Wereshark's alleged ability to generate such lightning bolts is not disclosed in any of the accessible material Plaintiff identified in his Complaint. *See* Complaint, Ex. B; Cohen Dec, Ex. 3 and ¶ 5.

A copy of the *Tribality* webpage referenced by Plaintiff is annexed to the Cohen Dec as Ex. 4; it describes weresharks as sea elves who were inflicted with lycanthropy, and which, in addition to their humanoid forms, have two alternate forms: a hybrid form, and a fully reef shark form. *Id.* The wereshark described on *Tribality* can, *expressly*, "speak, read, and write both Marine Trade (or Common) and Sylvan."[11] *Id.* While Plaintiff alleges that the *Tribality* website is misdated, perhaps as part of a conspiracy against him, his only basis for that allegation is mistakenly conflating the publication date of the *Pirate Campaign Compendium*, which, as noted above, is a third-party published role-playing book *compatible with* but not the same as, Wizards' Dungeons & Dragons Fifth Edition (referred to in the gaming space as "5e") with the publication date of D&D 5e itself. Complaint, at 3. As indicated by the copyright for Dungeons & Dragons 5e's *Monster Manual*, a copy of which is annexed to the Cohen Dec as Exhibit 5, and of which the Court may take judicial notice as a government document, D&D 5e was first released in 2014. Regardless, Plaintiff does not allege that *Tribality* is a Wizards publication. *Id.* It is not published by Wizards.

Plaintiff also alleges that Pathfinder's version of a wereshark infringes the Chan Wereshark because it can deal bludgeoning damage.[12] Complaint, at 3. As referenced on the *Archives of Nethys*

---

[11] Languages in the D&D universe.

[12] Damage in role-playing games is often categorized in various ways, whether elemental or otherwise aspected (fire, ice, necrotic, lightning, etc.), or by means of how it is inflicted (bludgeoning, piercing, cutting, etc.), which allows different types of creatures to deal or resist or be vulnerable to certain types of damage. For example, a fire elemental would likely deal and be immune or resistant to fire damage, while a Paladin in plate armor might be resistant to piercing damage but vulnerable to blunt-force bludgeoning damage.

webpage, which is referenced in the Complaint and annexed to the Cohen Dec as Ex. 6, Pathfinder is not, as Plaintiff alleges, a "division of Dungeons and Dragons," Complaint at 3; it is a competing tabletop role-playing game system published by an entirely different company, Paizo. *See* Cohen Dec Ex. 6 (referring to partnership between Paizo and *Archives of Nethys*, and linking to page, attached as Cohen Dec Ex. 7, describing their licensing arrangement). The Pathfinder wereshark – like the D&D wereshark – is described as a shapeshifter with the ability to speak. Cohen Dec Ex. 6.

Plaintiff also alleges that his copyright in the Chan Wereshark is infringed by the description of the D&D wereshark on the website 5esrd.com. Complaint, at 4. A copy of the webpage referenced by Plaintiff in his Complaint is annexed to the Cohen Dec as Ex. 8. However, that webpage makes clear that the wereshark featured, the "Wereshark Bloodrider," is the previously referenced wereshark from the *Pirate Campaign Compendium*, which was published by Legendary Games, not Wizards. *Id.* The page further describes Wereshark Bloodriders as speaking "Common" or "Goblin" languages, and as shapechangers who can polymorph into a "shark-humanoid hybrid, into a hunter shark, or "back into its true form, which is humanoid." *Id.* Notably, Plaintiff alleges that the wereshark seen on the 5esrd.com website infringes because it is resistant (not immune) to necrotic damage, while the Chan Wereshark is immune to disease. Complaint, at 4. However, Plaintiff does not identify where in his works the Chan Wereshark is characterized as being immune to disease, nor does he explain what connection he believes there to be between resistance to necrotic damage and immunity to disease. Complaint, at 4. Plaintiff also alleges that D&D infringes his copyright by referencing a wereshark "chieftain." Complaint at 4.

## III. ARGUMENT

### A. The Applicable Standard Does Not Require the Court to Accept as True Plaintiff's Implausible Allegations, and the Complaint Should be Dismissed for Failure to State a Claim

Rule 12(b)6 of the federal rules of Civil Procedure compels the dismissal of this complaint. A complaint should be dismissed unless the plaintiff pled sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must "[accept] the allegations contained in the complaint as true and [draw] all reasonable inference in favor of the nonmoving party," *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999), a complaint that offers mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S. at 545). The plaintiff's well-pleaded facts must "plausibly give rise to an entitlement to relief" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. In addition to the well-pleaded "facts stated on the face of the complaint," on a motion to dismiss the court may consider "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken." *Allen v. WestPointPepperell, Inc.*, 945 F.3d 40, 44 (2d Cir. 1991) (citation omitted).

### B. Plaintiff Fails to Plausibly Allege Copyright Infringement

Plaintiff only alleges one cause of action: copyright infringement. "To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101,109-10 (2d Cir. 2001). To establish infringement, "'a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, No. 09 Civ. 1783,

2010 WL 2802153, at *2 (S.D.N.Y. July 14, 2010) *quoting Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). Actionable copying may be established by proving actual copying directly or "circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material", and "that there are similarities between the two works that are probative of copying." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003); *accord Adams v. Warner Bros. Pictures Network*, No. 05 Civ. 5211, 2007 WL 1959022, at *3 (E.D.N.Y. June 29, 2007) ("In the context of deciding whether the defendant copied at all (as distinguished from whether it illegally copied), similarity relates to the entire work, not just the protectible elements, and is often referred to as 'probative similarity'"), *citing Fisher-Price, Inc. v. Well-made Toy Mfg., Corp.*, 25 F.3d 119, 123 (2d Cir. 1994).

Here, Plaintiff fails at every stage: he has failed to allege access, he has failed to allege either probative similarity or substantial similarity, and he has even failed to allege that any of the conduct complained of is attributable to Wizards. Indeed, by including the 2015 *Tribality* webpage in his Complaint, Plaintiff has affirmatively proven that the version of a wereshark appearing in D&D *could not have been* copied from the later-developed Chan Wereshark. For all of these reasons, Plaintiff's Complaint must be dismissed.

1. Plaintiff's Complaint forecloses any possibility of copying by alleging facts demonstrating that D&D weresharks existed before the Chan Wereshark

As an initial matter, Plaintiff's Complaint must be dismissed because he affirmatively alleges facts confirming that the wereshark in Wizards' Dungeons & Dragons role-playing game ***cannot*** have been copied from the Chan Wereshark because it ***predated*** the Chan Wereshark. A claim for copyright infringement must plausibly allege copying, and "it is impossible for [the allegedly infringing matter] to be a copy of something that did not yet exist when it was created." *Berg v. M&F W. Prods., Inc.*, No. 6:19-CV-00418-JDK, 2021 WL 2646223, at *2 (E.D. Tex. June 28, 2021) (finding

infringement claim frivolous and awarding fees where plaintiff maintained claim only by speculating that defendant had fabricated evidence that allegedly infringing design predated his work). Plaintiff's own Complaint supplies the evidence that the D&D wereshark that he alleges infringes the Chan Wereshark existed before he developed the Chan Wereshark. *Compare* Complaint at ¶ 3, Complaint at 2 (alleging that he created the Chan Wereshark in May or June 2016), *with* Complaint at 3 (referencing of *Tribality* webpage dated 2015).

Plaintiff's only response to this admission is to conclusorily allege that the *Tribality* page must be misdated (which, he suggests, might be as part of a conspiracy) because (he wrongly claims) Dungeons & Dragons 5e was not released until 2022. Complaint at 3. However, that is the publication date of the fifth edition of Legendary Games' *Pirate Campaign Compendium*, not D&D 5e. Indeed, there are many articles reviewing D&D 5e shortly after its 2014 launch, the existence of which the Court may judicially notice. *See* Cohen Dec Exs. 9-16. While the facts discussed in those articles – such as the particular mechanics used in the Fifth Edition, or the reviewers' views on its merits – may not be considered, the fact that several articles and webforums discussed the launch of D&D 5e in 2014 and 2015 is a proper matter for judicial notice. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("it is proper to take judicial notice of the fact that press coverage … contained certain information"); *Garber v. Legg Mason, Inc.,* 537 F. Supp. 2d 597, 612 (S.D.N.Y. 2008) (court can take judicial notice of existence of newspaper articles regarding a particular subject, though not of the truth of facts contained in the articles), *aff'd*, 347 F. App'x 665 (2d Cir. 2009). And because it is incontrovertible that Dungeons & Dragons 5e launched prior to the October 2015 *Tribality* piece discussed in the Complaint, Plaintiff's assertion that the date is a typo (let alone part of a conspiracy) is wildly implausible, and insufficient to survive this motion to dismiss. *See Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) ("wildly implausible allegations in

the complaint should not be taken to be true"). As such, the motion should be granted because the allegedly infringing work predates Plaintiff's work.

2. Plaintiff has not plausibly alleged that Wizards had access to his copyrighted works

While the analysis should end there, separate from the fact that the allegedly infringing work was created prior to the Chan Wereshark, Plaintiff also fails to plead that Wizards had any access to the Chan Wereshark. To sufficiently allege access, a plaintiff must plead either "a particular chain of events by which the defendant might have gained access to the work" or "facts showing that plaintiff's work was widely disseminated." *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) (cleaned up, quotations omitted). Plaintiff pleads neither.

As to the "particular chain of events," Plaintiff's theory of access is patently frivolous: maybe, he speculates, someone walking outside his open window heard him shouting about his wereshark idea, and then that somehow got passed along to Wizards. Complaint at 4 (proposing precisely that explanation for access). It is well-settled that this is insufficient to allege that Wizards had access to his work. *See Wager v. Littell*, 549 F. App'x 32, 33 (2d Cir. 2014) (no plausible allegation of access where plaintiff speculated that people to whom author loaned his manuscript might have shown it to defendant); *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988) ("[a]ccess must be more than a bare possibility and may not be inferred through speculation or conjecture").

Nor does Plaintiff plead that his work was widely disseminated. To plead wide dissemination, Plaintiff would have needed to allege that his work generated significant success and renown. *Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) (work is widely disseminated when it has had "considerable commercial success" or is "readily available on the market") (quotation omitted), *aff'd on other grounds*, 555 F. App'x 31 (2d Cir. 2014). A work's mere presence on the internet is not sufficient to allege wide dissemination. *Clanton*, 556 F. Supp. 3d at 328 ("As a matter of law, the fact that the Subject Composition was posted on the internet is insufficient on its

own to show 'wide dissemination.'"); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("[T]he mere fact that [the plaintiff's] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination."). *See also Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1108 (7th Cir. 2017) ("We decide only that the existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials."); *Gray v. Perry*, No. 215CV05642CASJCX, 2018 WL 3954008, at *5 (C.D. Cal. Aug. 13, 2018) ("the mere existence of copyrighted materials on YouTube and Myspace would not justify an inference of access"); *Hayes v. Minaj*, No. 2:12-CV-07972-SVW-SH, 2012 WL 12887393, at *3 (C.D. Cal. Dec. 18, 2012) ("that the video was placed on YouTube does not imply it was disseminated widely"); *Batts v. Adams*, 2011 WL 13217923 (C.D. Cal. Feb. 8, 2011) (finding that access was not established by evidence that the plaintiff's song was posted on YouTube, Amazon.com, and iTunes). Here, Plaintiff alleges only that he uploaded his various works to YouTube and to Amazon; that is not sufficient to allege access to those works by Wizards. The Complaint must therefore be dismissed for that reason as well.

3. <u>Plaintiff has not plausibly alleged relevant similarity between any Wizards work and the Chan Wereshark</u>

Similarly, Plaintiff fails to allege that Wizards copied any protectible element of the Chan Wereshark. To plausibly allege copying, Plaintiff must allege probative similarity. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003). To allege *illegal* copying, a plaintiff must demonstrate that the allegedly infringing work is substantially similar to protectible elements of the copyrighted work. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995). Accordingly, a district court can dismiss a claim on the basis that "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that

the two works are substantially similar." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010), *quoting Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983). In conducting that analysis, the court may consider the pleadings, the documents incorporated by reference within them, and the works at issue themselves. *Peter F. Gaito*, 602 F.2d at 64. Indeed, the works at issue supersede the descriptions of them in the complaint. *Id.*

More, copyright protection therefore extends only to an author's particular expression of an idea – not to the idea itself, and only those components of a work that are original to the author are protectable. *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001). "Simply because a work is copyrighted does not mean every element of that work is protected." *Id.* Werewolves are *scènes à faire* supernatural creatures for a fantasy setting. *Freeman v. Deebs-Elkenaney*, 823 F. Supp. 3d 402, 413 (S.D.N.Y. 2026). As indicated by the 2015 *Tribality* article Plaintiff included in his Complaint, and which the Court can therefore consider, the same applies to other were-creatures; the idea of such creatures, ***specifically including weresharks***, is not one created by Plaintiff. *See* Cohen Dec Ex. 4. As such, Plaintiff's work is a combination of protectible and unprotectible elements, and it must be analyzed as such, considered in the manner of a "more discerning ordinary observer," and looking only to whether the defendant's works are substantially similar to the protectible elements of the plaintiff's works, standing alone. *See Williams v. Crichton*, 84 F.3d 581, 587-88 (2d Cir. 1996); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986); *Lewinson v. Henry Holt and Co., LLC*, 659 F. Supp. 2d 547, 565 (S.D.N.Y. 2009).

Applying that test, it is crystal clear that Plaintiff has failed to plausibly allege substantial similarity. The only specific similarities alleged in the Complaint are a hybrid shark-headed humanoid form, Complaint at ¶ 3, Ex. A, the capacity to bludgeon, Complaint at 3, Ex. G, some form of electrical connection, Complaint at 3, resistance to either necrotic damage or disease (which

Plaintiff equates), Complaint at 4, and references to "chieftains." Complaint at 4, Ex. G.[13] Even before considering the vast differences between the Chan Wereshark and Wizards' version of a wereshark, these points of connection are woefully insufficient to plead a plausible infringement claim. The hybrid shark-humanoid form and the idea that a tribe would be led by a chieftain are pure *scènes à faire* for lycanthropes and unprotectible ideas. So is the idea that a monster can hit hard (bludgeon). The allegedly infringing use of electrical sensitivity to "see" while blinded is both a natural feature of real-world sharks, which the Court may take judicial notice was publicly known prior to 2016,[14] and dramatically different from the allegedly infringed ability of the Chan Wereshark to shoot lightning bolts from its body. Complaint at Ex. B, Ex. D, Ex. G; *cf. Freeman*, 823 F. Supp. 3d at 446 (alleged similarities were either trivial use of normal and expected tropes or not similarities at all). Similarly, resistance to necrotic damage (a type of damage that is death and decay aspected), a feature of the allegedly infringing weresharks, and immunity to disease, allegedly a feature of the Chan Wereshark, are simply not the same thing. More, neither the supposed lightning weapon nor the supposed immunity to disease appear *anywhere* in Plaintiff's referenced works. *See* Complaint at Ex. B; Cohen Dec ¶ 5 and Ex. 3. There is simply no "there" there.

But also, the allegedly infringing wereshark and the Chan Wereshark are dramatically different, in ways that confirm that no jury could ever find the one copied from the other. For instance, the Chan Wereshark cannot shift forms. Complaint, Ex. A at 7. Plaintiff's Complaint makes clear that the allegedly infringing weresharks in D&D can shift between three forms – shark, human, and hybrid. *See* Cohen Dec Exs. 4, 8 (the referenced Tribality and 5eSRD pages). The Chan Wereshark cannot speak at all. Complaint, Exs. B, D, and G; *Neptunrise* at 3:35-3:57, 4:27-5:02 (Chan

---

[13] As discussed in Point III.B.4, *infra*, some of these "similarities" are to other companies' versions of a wereshark – Paizo and Legendary Games – and cannot be a basis for adequately pleading a complaint against *Wizards*. But no matter, because the supposed "similarities" either do not exist or are not protectible; none supports a claim.
[14] *See* https://phys.org/news/2015-03-shark-sixth-aid.html.

Wereshark making only odd moaning sounds). Plaintiff's Complaint makes clear that the allegedly infringing weresharks in D&D can speak *at least*[15] two languages. Cohen Dec Exs. 4, 8. The Chan Wereshark can only be harmed by magnets and has impenetrable skin. Complaint at ¶ 3, page 2, & Ex. B. The allegedly infringing weresharks in D&D either have no special immunity to damage, Cohen Dec Ex. 4 (Tribality version), or have standard lycanthropic immunity to non-silvered weapons, Cohen Dec Ex. 8 (*Pirate Campaign Compendium* version discussed on 5esrd.com).

Viewed in their totality, as the Court must, *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 309–10 (S.D.N.Y. 1999) ("[i]n determining whether characters are similar, a court looks at the totality of the characters' attributes and traits as well as the extent to which the defendants' characters capture the total concept and feel of figures in plaintiff's work") (cleaned up), the two creatures are simply nothing alike at all, let alone substantially similar. *See Freeman*, 823 F. Supp. 3d at 413; *see also Hogan*, 48 F. Supp. 28 at 310-11 (defendant's half-vampire character named Nicholas Gaunt did not infringe plaintiff's half-vampire character Nicholas Gaunt where similarities were "unprotectable ideas and themes that do not represent any original elements of plaintiffs' work). The Complaint must be dismissed for that reason as well.

4. Even if Plaintiff had plausibly alleged actionable copying, he has not identified any allegedly infringing work published by Wizards

Finally, and even were none of the above issues present, Plaintiff's Complaint must be dismissed because he has not alleged any infringement *by Wizards*. Plaintiff's Complaint identifies four allegedly infringing works: (1) Legendary Games' *Pirate Campaign Compendium*; (2) 5esrd.com's entry for the "Wereshark Bloodrider" that it expressly sources to the *Pirate Campaign Compendium*; (3) the *Tribality* website's discussion of a wereshark; and (4) the Pathfinder wereshark described on the

[15] Creatures' baseline statistics in Dungeons & Dragons are merely a starting point; player characters can grow in essentially any direction the player wishes to take them, and Dungeon Masters running adventures for parties (groups of players) have the creative freedom to adjust non-player characters in any way they feel best; that's the point and joy of D&D.

*Archives of Nethys* webpage. Complaint at 3-4. Plaintiff alleges *no* facts connecting any of those entities to Wizards, and in fact there is no connection. Per its terms of service, the legal entity behind Legendary Games is Legendary Games LLC. *See* Cohen Dec Ex. 17. 5esrd.com, ArchivesofNethys.com, and Tribality.com are third-party websites. And while Plaintiff conclusorily alleges that Pathfinder is a "division" of D&D, Complaint at 3, that is no more plausible than an allegation that Apple is a division of Microsoft would be; Pathfinder is published by Wizards' competitor, Paizo, Inc. Thus, even assuming Plaintiff's Complaint sufficiently alleged any sort of infringement at all (and it has not), Plaintiff has failed to allege any infringement by the defendant he named. The Complaint must therefore be dismissed for that reason, too.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim and must be dismissed. He has sued Wizards for the alleged conduct of others, failed to even plausibly plead copyright infringement, and alleged temporally impossible acts. These defects in his pleadings require dismissal.

Dated: August 25, 2026
New York, New York

**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**

By: */s Akiva M. Cohen*
Akiva M. Cohen, Esq.
1700 Broadway, 16th Floor
New York, New York 10019
Tel: (212) 400 – 4930
Fax: (866) 221 – 6122
acohen@kusklaw.com
*Attorneys for Defendant Wizards of the Coast, LLC*

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to LCR 7.1(c), that this memorandum of law complies with the applicable word-count limit. As measured by the word-processing system used to prepare it, and excluding the caption, table of contents, table of authorities, signature block, and this certification, this memorandum contains 5,610 words, which is within the 8,750-word limit.

By: *__/s Akiva M. Cohen__*
Akiva M. Cohen