**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LAP-SUN CHAN

Plaintiff,

-against-

WIZARDS OF THE COAST LLC

Defendants.

C.A. NO. 1:26-CV-04680

**DEFENDANT WIZARDS OF THE COAST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS FOR VIOLATION OF FEDERAL RULE OF CIVIL PROCEDURE 11**

# DEFENDANT WIZARDS OF THE COAST'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS FOR VIOLATION OF FEDERAL RULE OF CIVIL PROCEDURE 11

# Table of Contents


I. Introduction ..... 5

II. Factual Background ..... 7

A. Chan's Frivolous Claims ..... 7

B. Wizards, Paizo, Legendary Games, Tribality.com and 5eSRD.com Are all Distinct Entities ..... 7

C. Wizards' Prior Publications Depicting Weresharks Predate Chan's Publication of *Were* and *Wereshark: Neptunerise* by Decades ..... 8

D. Other Shark-Human Hybrids Predate 2016 ..... 9

E. Chan Is on Notice that His Claims Are Frivolous ..... 11

F. This Is Not the First Time Chan Has Filed Frivolous Copyright Lawsuits ..... 11

III. Argument ..... 13

A. Legal Standard for Whether to Impose Sanctions ..... 13

B. Chan's Pre-Filing Inquiry into the Evidentiary Support for His Claim Was Objectively Unreasonable ..... 14

C. Chan Knew or Should Have Known that his Complaint Was Legally Defective but Nevertheless Filed it with an Improper Motive ..... 17

D. The Court Should Strike the Complaint and Award Wizards its Costs Incurred in This Litigation ..... 20

E. Chan Should also Be Ordered to Show Cause Why He Should not Be Required to Obtain Leave of Court Before Filing Further Copyright Actions in This District ..... 22

IV. CONCLUSION ..... 25

# Table of Authorities

**Cases**

*An v. Despins*, No. 22-CV-10062 (VEC), 2023 WL 4931832 (S.D.N.Y. Aug. 2, 2023)..........18

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008)..........22

*Brubaker v. City of Richmond,* 943 F.2d 1363 (4th Cir. 1991)..........14

*Cap. Bridge Co. v. IVL Techs. Ltd.*, No. 04-CV-4002 (KMK), 2007 WL 316832 (S.D.N.Y. Oct. 26, 2007)..........15

*Chan v. Troma Entertainment*, No. 26 CV 06960 (S.D.N.Y. 2026)..........5, 13, 24

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)..........21

*Curtis Mgmt. Grp., Inc. v. Acad. of Motion Picture Arts & Scis.*, 717 F. Supp. 1362 (S.D. Ind. 1989)..........20

*De Long v. Hennessey*, 912 F.2d 1144 (9th Cir.)..........24

*DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157 (2d Cir. 1999)..........14

*DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 899 F. Supp. 91 (N.D.N.Y. 1995)..........14

*Eng v. Baldwin*, Case No. 1:14-cv-01644 (E.D.N.Y. 2014)..........12

*Eng v. Captain Blue Hen Comics*, No. 14-CV-3631 ENV LB, 2014 WL 2941280 (E.D.N.Y. June 30, 2014)..........12, 13, 18, 19

*Eng v. Creators of the Philosoraptor*, Case No. 1:14-cv-04948 (S.D.N.Y. 2014)..........12, 13, 20, 21

*Eng v. Cushing*, Case No. 1:14-cv-03905 (E.D.N.Y. 2014)..........13, 21

*Eng v. Officer X*, Case No. 1:14-cv-04036 (E.D.N.Y. 2014)..........13, 21

*Eng v. Pacermonitor.com,* Case No. 1:14-cv-03912 (E.D.N.Y. 2014)..........13, 21

*Eng v. Radio Comix*, Case No. 1:14-cv-03810 (E.D.N.Y. 2014)..........12, 13, 21

*Ferguson v. Comm'r of Tax & Fin.*, 739 F. App'x 19 (2d Cir. 2018)..........16

*Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494 (2d Cir. 2009)..........16

*Granville Gold Tr.-Switzerland v. Commissione Del Fullimento/ Inter Change Bank*, 924 F. Supp. 397 (E.D.N.Y. 1996)..........6

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239 (S.D.N.Y. 2009)..........15

*Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11 (E.D.N.Y. 1996)..........24

*Hubbuch v. Cap. One, N.A.*, No. 25-CV-406, 2026 WL 691261 (S.D.N.Y. Feb. 10, 2026)..........22

*In re Martin-Trigona*, 9 F.3d 226 (2d Cir. 1993)..........24

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525 (2d Cir. 2005)..........23

*Lap-Sun Chan v. CT Phipps, et al.*, 1:26-cv-05083 (S.D.N.Y., June 12, 2026)..........13, 24

*Lipin v. Hunt*, 573 F. Supp. 2d 836 (S.D.N.Y. 2008)..........22

*Maduakolam v. Columbia Univ.*, 866 F.2d 53 (2d Cir. 1989)..........15

*Malley v. N.Y. City Bd. of Educ.*, 207 F. Supp. 2d 256 (S.D.N.Y. 2002) ....................16
*Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229 (E.D.N.Y. 2014) ....................21
*Margo v. Weiss*, 213 F.3d 55 (2d Cir. 2000) ....................14
*Miller v. Schweickart*, 413 F. Supp. 1059 (S.D.N.Y. 1976) ....................15
*Morris v. Wachovia Sec.*, 448 F.3d 268 (4th Cir. 2006) ....................14
*Murawski v. Pataki*, 514 F. Supp. 2d 577 (S.D.N.Y. 2007) ....................16
*Obert v. Republic W. Ins. Co.*, 264 F. Supp. 2d 106 (D.R.I. 2003) ....................22
*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996) ....................15
*Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986) ....................23
*Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992) ....................16
*Schottenstein v. Schottenstein*, 230 F.R.D. 355 (S.D.N.Y. 2005) ....................20
*Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996) ....................16
*Sussman v. Bank of Israel*, 56 F.3d 450 (2d Cir. 1995) ....................18
*Televideo Sys., Inc. v. Mayer*, 139 F.R.D. 42 (S.D.N.Y. 1991) ....................6
*Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 223 (S.D.N.Y.) ....................15
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) ....................16
*Warren v. Guelker*, 29 F.3d 1386 (9th Cir. 1994) ....................16
*Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347 (S.D.N.Y. 2002) ....................14
*Weichert v. United States*, 458 F.Supp.2d 57 (N.D.N.Y. 2006) ....................15

**Rules**

Fed. R. Civ. P. 11(c) ....................14

Defendant Wizards of the Coast LLC ("Wizards") respectfully files this Memorandum of Law in Support of its Motion for Sanctions against Plaintiff Lap-Sun Chan ("Chan" or "Plaintiff"), pursuant to Fed. R. Civ. P. 11 and this Court's inherent powers.

## I. INTRODUCTION

Chan, a self-described "Asian supremacist"[1] whose work is littered with slurs, is a serial frivolous *pro se* litigant who has brought – and had swiftly dismissed – more than two dozen meritless claims over the past 10 years. This action is more of the same. Chan sues Wizards for the inclusion of "weresharks" in the Dungeons & Dragons ("D&D") game universe, alleging that such inclusion infringes a shark-type were-creature[2] he claims to have created in 2016, more than 40 years after weresharks first appeared in D&D. There are many problems with this claim, some of which – those laid out in Wizards' companion 12(b)(6) Motion to Dismiss – involve issues of technical copyright law, such as access, substantial similarity, and the idea-expression dichotomy. Chan is now well-aware of those issues from Wizards' Rule 11 Letter, and even incorporated that awareness into his **latest** frivolous lawsuit, *Chan v. Troma Entertainment*, No. 26 CV 06960 (S.D.N.Y. 2026) (filed 8/14/26, suing over the use of a "weredeer," and expressly referencing, for the first time in any of his many complaints, "access" and "substantial similarity"). Chan's refusal to withdraw the suit despite his awareness of its lack of merit opens him to Rule 11 sanctions. But more, Chan has sued

---

[1] *See Eng v. Treadwell*, Case No. 1:14-cv-09256, Dkt. No. 1 (S.D.N.Y. 2014) (self-identifying his religion as "Asian Supremacy 卐" ).

[2] The archetypical were-creature is the werewolf: a person who can shift between human and wolf forms, often depicted as having a therianthropic (meaning "combining human and animal form," *see* Therianthropic, *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/therianthropic (accessed Aug. 4, 2026)) form. Such creatures are frequently referred to as lycanthropes. (While the term "lycanthrope" should theoretically be limited to werewolves, as it derives from the Greek myth of King Lycaon, who was turned into a wolf by Zeus, the term lycanthrope has been used to refer to all supernatural shapeshifters since at least 1977. *See* Gary Gygax, *Monster Manual*, TSR Games (1977).)

In D&D, a wereshark is a person who can shift between human form, a hybrid form, and shark form. *See Lost Empires of Faerûn*, p. 183 (2005). Plaintiff's version of the wereshark cannot shapeshift and is merely an anthropomorphic shark. Complaint, Ex. B. As such, Plaintiff's version of the wereshark is more akin to the protagonists of the 1994 animated TV series "Street Sharks." *See*, *e.g.*, Brian Vanhooker *It's time to bring back the best Ninja Turtles knockoff ever made*, Polygon.com (1/4/26), *available at* https://www.polygon.com/street-sharks-reboot-tmnt-knockoff/.

Wizards for supposedly infringing content published only by *other* entities: Paizo (another publisher of tabletop role-playing games), Legendary Games, and various third-party websites, for which Wizards could have no potential liability even were the claims ***not*** substantively meritless (which they are).

Even beyond that, there is a much more fundamental problem regarding the timing of Chan's allegations of infringement, an issue that Wizards could not meaningfully address on its 12(b)(6) motion but did demonstrate to Chan in its Rule 11 Letter, complete with evidence that D&D incorporated weresharks decades before Chan claims to have "invented" them. The letter also included evidence of other human-shark hybrid characters in popular culture that predated 2016. It requires no unique education or knowledge to know that an earlier creation cannot infringe a later one, and this suit is thus frivolous on its face.

Rule 11 is meant to prevent such abusive litigation tactics, thwart frivolous actions, and deter misconduct in the signing and advocacy of pleadings and motions, whether by an attorney *or* a *pro se* litigant. *Granville Gold Tr.-Switzerland v. Commissione Del Fullimento/ Inter Change Bank*, 924 F. Supp. 397, 408 (E.D.N.Y. 1996), *aff'd sub nom. Granville Gold Tr. v. Commissione Del Fullimento/Inter Change Bank*, 111 F.3d 123 (2d Cir. 1997); *Televideo Sys., Inc. v. Mayer*, 139 F.R.D. 42, 47 (S.D.N.Y. 1991); *see also* Fed. R. Civ. Pro. R. 11(b) ("By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or *unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . ." (emphasis added)). Claims that are objectively baseless and legally meritless are frivolous and should be dealt with as such. Chan is a uniquely appropriate target for such relief: the judges of this district have repeatedly warned him against further frivolous litigation, to no effect. To the contrary, it seems Chan incorporated elements of Wizards' Rule 11

arguments into a lawsuit he recently filed against Troma.[3] It is thus clear that no relief short of a sanction will have any deterrent impact. Indeed, given that history, and the need to protect innocent third parties against Chan's abuses, the Court should issue an Order to Show Cause as to why Chan should not be declared a vexatious litigant subject to a pre-filing review requirement before being permitted to file *pro se* suits such as this. The motion should be granted.

## II. FACTUAL BACKGROUND

### A. Chan's Frivolous Claims

The details of Chan's frivolous claims in this action are set forth in detail in Wizards' Motion to Dismiss, Dkt. No. 15 at 3-7. Wizards respectfully incorporates that discussion herein.

### B. Wizards, Paizo, Legendary Games, Tribality.com and 5eSRD.com Are all Distinct Entities

Wizards is a limited liability company with its principal place of business in Renton, Washington. Wizards acquired TSR, Inc., the original publisher of D&D, in 1997, along with TSR's catalog of published D&D works and the related intellectual property. Declaration of William Ansell ("Ansell Dec."), ¶ 3. D&D, which is generally accepted as the first tabletop role-playing game,[4] was originally published by TSR, Inc. in 1974. *Id.* Since then, D&D has gone through several editions and revisions. *Id.*, ¶4. The version of D&D's ruleset at issue in this case, the Fifth Edition or "5e," was launched in 2014. *Id.*

Paizo, Inc. ("Paizo") was founded in 2002, is based in Redmond, Washington, and publishes the Pathfinder and Starfinder tabletop role-playing games. Declaration of Thomas Neville Dec., ¶ 31. Paizo published Pathfinder's first edition in 2009. D&D and Pathfinder are competitors in the marketplace. Ansell Dec., ¶ 9. Both Wizards and Paizo allow third-party publishers to make and

---

[3] A brief review of that Complaint reveals that it is similarly frivolous, repeating his allegation that the alleged infringer must have learned of his creation by overhearing him yelling about it while in pain.

[4] Tabletop role-playing games are cooperative and collaborative storytelling games in which a group of players assume the roles of the characters in a story and work together (often with a referee, or "Dungeon Master") to tell tales of adventure. Frequently, whether a character's actions are successful is determined by the roll of one or more dice.

publish – and even sell – content set in their respective narrative universes and compatible with their rulesets and mechanics; Wizards does so through its Open Gaming License. *Id.*, ¶ 10. ArchivesofNethys.com is a third-party website that bills itself as a resource for Pathfinder players, and which licenses content from Paizo. Neville Dec., ¶ 32.

Legendary Games is an unaffiliated publisher who produces 5e content under the Open Gaming License, along with content for other games like Pathfinder. Ansell Dec., ¶ 9. Legendary Games published the *Pirate Campaign Compendium, Revised*, and previously published the *Pirate Campaign Compendium* using Pathfinder rules. Neville Dec., ¶ 33.

5eSRD.com is a third-party website that acts as a resource for D&D players aggregating both official Wizards content and third-party content published under the Open Gaming License. Ansell Dec., ¶ 9. Tribality.com is a third-party multi-author blog that covers tabletop gaming, including tabletop role-playing games. Neville Dec., ¶ 34, Ex. 20.

### C. Wizards' Prior Publications Depicting Weresharks Predate Chan's Publication of *Were* and *Wereshark: Neptunerise* by Decades

Weresharks have made frequent appearances in D&D. Ansell Dec., ¶ 5. This table identifies the various editions of D&D and when they were published.

| Publication | Publisher | Pub. Year |
|---|---|---|
| *Dungeons & Dragons* | TSR, Inc. | 1974 |
| *Dungeons & Dragons Basic Set* | TSR, Inc. | 1977 |
| *Advanced Dungeons & Dragons* | TSR, Inc. | 1977 |
| *Dungeons & Dragons (Basic and Expert Sets)* | TSR, Inc. | 1981 |
| *Dungeons & Dragons (Basic, Expert, Companion, Master, and Immortal Rules)* | TSR, Inc. | 1983-1986 |
| *Advanced Dungeons & Dragons 2nd Edition* | TSR, Inc. | 1989 |
| *Dungeons & Dragons Rules Cyclopedia* | TSR, Inc. | 1991 |
| *Advanced Dungeons & Dragons Revised 2nd Edition* | TSR, Inc. | 1995 |
| *Dungeons & Dragons (3rd Edition)* | Wizards of the Coast | 2000 |
| *Dungeons & Dragons v. 3.5* | Wizards of the Coast | 2003 |
| *Dungeons & Dragons 4th Edition* | Wizards of the Coast | 2008 |
| *Dungeons & Dragons 5th Edition* | Wizards of the Coast | 2014 |
| *Dungeons & Dragons 5.5e* | Wizards of the Coast | 2024 |

The wereshark made its first appearance in an official D&D supplement in 1983, in the *Monster Manual II*.[5] Chan is well aware of this fact. Neville Dec., Ex. 21. The chart below shows all of the dates on which weresharks have appeared in official D&D sourcebooks since 1983.

| Publication | Year Published |
|---|---|
| *Dungeons & Dragons Rules Cyclopedia* | 1991 |
| *Advanced Dungeons & Dragons 2nd Edition: Ravenloft Islands of Terror* | 1992 |
| *Advanced Dungeons & Dragons 2nd Edition: Forgotten Realms City of Splendors* | 1994 |
| *Advanced Dungeons & Dragons 2nd Edition: Monstrous Compendium Annual Vol. 2* | 1995 |
| *Monstrous Compendium: Monsters of Faerûn* | 2001 |
| *Lost Empires of Faerûn* | 2005 |

While the 1983 *Monster Manual II* was the first *official* publication of the wereshark in D&D, it was not the first actual publication. That honor goes to the July 1976 issue of *Alarums and Excursions*, a copy of which is annexed as Exhibit 8 to the Neville Dec. Moreover, even if time alone were not sufficient to defeat all of Chan's allegations, as extensively detailed in Wizards' Rule 12(b)(6) Motion to Dismiss, the features of Chan's wereshark and the D&D wereshark could not be more dissimilar. Dkt. 14, p. 13-15.

## D. <u>Other Shark-Human Hybrids Predate 2016</u>

Although D&D's use of the wereshark predates Chan's by decades, even D&D cannot claim credit for the idea. As discussed in greater detail in Wizards' Motion to Dismiss, lycanthropic monsters – werewolves and the like – have been found in folklore and fiction since antiquity. *See* Dkt. 14, p. 1-2. (collecting references). *See also Dauenhauer Tlingit Oral Literature Collection*, A.P. Johnson in Sitka (audiotape, undated) (Dauenhauer Tlingit Oral Literature Collection, Item 31, Tape 27, available at https://www.uaf.edu/anla/record.php?identifier=ANLC1907); Dennison W. Traill, *Orkney Folk-Lore,* 7 The Scottish Antiquary, or, Northern Notes and Queries, 28, 171 (1893). DC Comics has featured numerous shark-human hybrids since its Silver Age. *See Nightwing*, Vol. 4, No.

[5] Gary Gygax, *Monster Manual II*, (TSR, Inc., 1983).

35 February 2018 (Guppy), *Superboy*, Vol. 4, No. 0, October 1994 (King Shark), *Green Lantern* 24, October 1963 (Karshon). Other examples abound.

In the tabletop role-playing game space alone, Wizards has identified 12 examples of the wereshark appearing prior to 2016, including;

| Title | Publisher | Year |
|---|---|---|
| *Were Shark (Alarums and Excursions, Vol. 13)* | Lee Gold | July 1976 |
| *Advanced Dungeons and Dragons: Monster Manual II, 1st Edition* | TSR, Inc. | 1983 |
| *Dungeons & Dragons Rules Cyclopedia* | TSR, Inc. | 1991 |
| *Advanced Dungeons and Dragons: Ravenloft Islands of Terror* | TSR, Inc. | 1992 |
| *City of Splendors: Forgotten Realms* | TSR, Inc. | 1994 |
| *Advanced Dungeons and Dragons 2nd Edition: Monstrous Compendium Annual Volume 2* | TSR, Inc. | 1995 |
| *Werewolf: the Apocalypse Rokea* | White Wolf Publishing | April 2001 |
| *Monstrous Compendium: Monsters of Faerûn* | Wizards of the Coast | 2001 |
| *Lost Empires of Faerûn* | Wizards of the Coast | 2005 |
| *Bestiary Nefarious: Creatures of the East* | Stephen C. Klauk | 2008 |
| *Pathfinder Bestiary 4* | Paizo, Inc. | 2013 |
| *Pathfinder Player Companion: Blood of the Moon* | Paizo, Inc. | 2013 |

Dr. Holmes' recap of a session of D&D is particularly noteworthy because it contains information regarding the genesis of the monster. Dr. Holmes explains:

> The were-sharks are based on a Polynesian legend of demon creatures that assume human form to deceive their neighbors, but slip away into the sea to kill lonely fishermen. Persons suspected of being man eating shark demons are stripped by their accusers and found to have a mouth, lined with shark's teeth in the small of their backs. The creatures encountered by Barely and his friends are not typical Polynesian shark demons, but do have the bizarre combination of human and shark characteristics suggested by the legend.

*Alarums & Excursions*, Vol. 13, at p. 94. The article also contains an illustration of an anthropomorphic shark. *Id.*

## E. <u>Chan Is on Notice that His Claims Are Frivolous</u>

The facts discussed above are not new to Chan. To the contrary, Wizards sent Chan most of these facts, along with citations and exhibits verifying them, on July 28, 2026, as part of its Rule 11 Letter. A copy of Wizards' Rule 11 package containing the Rule 11 Letter, the Notice of Motion, and the exhibits is attached as Exhibit 21 to the Neville Dec. Chan is thus well aware that his factual claims are false and legally untenable. Rather than withdraw this action, however, Chan used Wizards' Rule 11 Letter to inform his frivolous lawsuit against Troma, adding the concepts of access and substantial similarity to his allegations for the first time in his litigation history.

## F. <u>This Is Not the First Time Chan Has Filed Frivolous Copyright Lawsuits</u>

Since 2014, Chan has filed 12 other copyright infringement cases, ten of which have been dismissed (the other two, filed in June and August 2026, are still pending). The bases for these dismissals are varied and include Chan's repeated filings attempting to assert a copyright over an idea, his failure to demonstrate registration of the work in question, or his refusal to submit amended complaints without extensive racial and antisemitic invective.[6] Neville Dec. Exhibit 30. Many of the dismissal orders observed that Chan failed to state a claim for copyright infringement because his complaint alleged the defendants had copied his ideas. *See e.g., Eng v. Captain Blue Hen Comics*, No. 14-CV-3631 ENV LB, 2014 WL 2941280, at *2 (E.D.N.Y. June 30, 2014) (dismissing claim for failure to allege registration or substantial similarity, and warning that filing further frivolous complaints could result in entry of a filing injunction or monetary sanctions); *Eng v. Creators of the Philosoraptor Website*, No. 14-cv-4948 LAP (S.D.N.Y. September 16, 2014), Dkt. No. 3 (dismissing Chan's copyright infringement lawsuit as based "solely on the fact that both characters are anthropomorphic raptors and in the use of the name Philosoraptor").

[6] *See* Order of Dismissal, *Eng v. Podolnick*, Case No. 1:14-cv-04675 (S.D.N.Y 2014), Dkt. No. 7.

Indeed, most of Chan's copyright infringement cases since 2014 share basic commonalities. Chan alleges that he created the "idea" of a character or simply a name, and that the defendants copied that character or its name based on superficial similarities. *See* Complaints in *Eng v. Baldwin*, Case No. 1:14-cv-01644 (E.D.N.Y. 2014) (alleging infringement based on commonalities of ideas such as a dragon god, space dragons, dragons and technology appearing in the same setting, aliens fighting dragons, and cybernetic dragons using weapons); *Eng v. Captain Blue Hen Comics*, No. 1:14-cv-03631 (E.D.N.Y 2014) ("I created the idea of Einstein and other scientists becoming superheroes in 2003…."); *Eng v. Berger*, Case No. 1:14-cv-03632 (E.D.N.Y. 2014) (alleging infringement based on use of the name "Terrordactyl"); *Eng v. Creators of the Philosoraptor Website*, Case No. 1:14-cv-04948 (S.D.N.Y. 2014) (alleging infringement based on common use of anthropomorphic raptors named "the Philosoraptor"); and *Eng v. Radio Comix*, Case No. 1:14-cv-03810 (E.D.N.Y. 2014) (alleging infringement based on common use of anthropomorphic unicorns wearing sunglasses). In his suits, Chan seeks millions of dollars in damages. *See* Complaints in *Baldwin* (seeking $10,000,000); *Captain Blue Hen Comix*; *Radio Comix* (seeking $10,000,000); and *Berger* (seeking $1,000,000.00). And his cases were dismissed for failure to state a claim. *See* Orders of Dismissal in *Baldwin* (dismissed because Chan "has seized hold of similarities between his *ideas*, and [the Defendant's work]"); *Captain Blue Hen Comix* (dismissed because Chan's claim is based on his creation of an idea, which is not protected); *Berger* (dismissed because Chan's claim is based on the copying of a name); *Radio Comix* (dismissed because allegedly infringing character was not "substantially similar" to Chan's own creation); *Creators of the Philosoraptor* (dismissed because Plaintiff's character and the allegedly infringing character were both "anthropomorphic raptors" and used the name "Philosoraptor"). Each of these dismissals was accompanied by an order outlining the proper tests for infringement and explaining why Chan's claims failed.

Chan's frivolous approach to intellectual property law has remained consistent since 2014. Wizards is just one of the latest companies to be targeted by Chan for using the longstanding mythical concept of a shapeshifting human-animal hybrid. *See Lap-Sun Chan v. CT Phipps, et al.*, 1:26-cv-05083 (S.D.N.Y., June 12, 2026), and *Chan v. Troma Entertainment*, 1:26-cv-06960 (S.D.N.Y., Aug. 14, 2026), both alleging that Chan "created an idea for . . . an anthropomorphic deer," and asserting claims for copyright infringement based on the use of a shapeshifting, anthropomorphic deer in another work of fiction). Multiple courts have warned Chan against filing frivolous lawsuits. *Eng v. Creators of the Philosoraptor*, Case No. 1:14-cv-04948 (S.D.N.Y. 2014) (collecting Chan's extensive litigation history and the numerous cases in which he had been warned against pursuing frivolous lawsuits); *Eng v. Officer X*, Case No. 1:14-cv-04036 (E.D.N.Y. 2014) (Dkt. No. 5 at 3) (warning Chan against further frivolous filings); *see also Eng v. Pacermonitor.com,* Case No. 1:14-cv-03912 (E.D.N.Y. 2014) (Dkt. No. 5 at 4) (same); *Eng v. Cushing*, Case No. 1:14-cv-03905 (E.D.N.Y. 2014) (Dkt. No. 5 at 4) (same); *Eng v. Radio Comix*, Case No. 1:14-cv-03810 (E.D.N.Y 2014) (Dkt. No. 3 at 8) (same); *Eng v. Berger*, Case No. 1:14-cv-03632 (E.D.N.Y. 2014) (Dkt. No. 5 at 8) (same). Those warnings have clearly been ignored.

## III. ARGUMENT

### A. Legal Standard for Whether to Impose Sanctions

Both as to its factual allegations and his legal claims, Chan's Complaint fails to satisfy Rule 11. His legal claims are frivolous, and his fact allegations utterly lack viability.

Rule 11 requires that a party "make a reasonable inquiry as to the viability, legally and factually, of claims made in pleadings, written motions, and other papers filed with the court." *DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 899 F. Supp. 91, 95 (N.D.N.Y. 1995). "To be reasonable, the prefiling investigation must uncover some information" and basis in law "to support the allegations in the complaint." *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir. 1991).

"An award of fees under Rule 11 is warranted where a party is objectively unreasonable in filing a pleading, written motion, or other paper. *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). Rule 11 uses an objective unreasonableness standard to "eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (quoting the advisory committee note to the 1993 amendments to Rule 11). A pleading, motion, or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). A pleading, motion, or other paper sets forth a frivolous legal position if it is "clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Grp., L.P.*, 186 F.3d at 167 (quoting *Mareno v. Rowe*, 910 F.2d 1043 (2d Cir. 1990)).

Thus, a party who presses a position that is not legally or factually tenable is subject to sanction under Rule 11. *Morris v. Wachovia Sec.*, 448 F.3d 268, 279 (4th Cir. 2006); *see* Fed. R. Civ. P. 11(c)(1) (sanctions may be imposed upon "on any attorney, law firm, or party who violated the rule or is responsible for the violation"). Rule 11 sanctions are not appropriate in response to every losing argument, however, instead, "the standard is not whether the claim is a loser, but rather whether the claim is so clearly a loser that it is in the interest of justice to deter future plaintiffs and attorneys from prosecuting similar ones." *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 223 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017).

## B. Chan's Pre-Filing Inquiry into Evidentiary Support for His Claim Was Objectively Unreasonable

"Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for the claim, and to certify that the legal arguments are supported by existing law, and therefore that they are not frivolous." *Cap. Bridge Co. v. IVL Techs. Ltd.*, No. 04-CV-4002 (KMK), 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007); *see also* Fed. R. Civ. Pro. R. 11(b)

(Rule 11's duty to investigate applies both to attorneys and unrepresented parties). A litigant's factual allegations are frivolous when they are "utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996).

Further, where documents or other information are accessible to a party and/or its counsel, they must review them, and their failure to do so violates the requirement that they must make a reasonable factual inquiry. *Weichert v. United States*, 458 F. Supp. 2d 57, 67 (N.D.N.Y. 2006). That duty extends to the identification of parties. *See Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 264 (S.D.N.Y. 2009) (holding that complaint lacking allegations specifically tying defendants to any of the five claims asserted against them violated Rule 11 because the claims were completely lacking in support); *Miller v. Schweickart*, 413 F. Supp. 1059, 1061 (S.D.N.Y. 1976) ("[u]nverified hearsay based on rumor is not sufficient upon which to subject one to the burdens of complex litigation and heavy legal costs….").

Chan's *pro se* status does not place him beyond the reach of Rule 11. It is well settled that "Rule 11 applies both to represented and *pro se* litigants," *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989), and that while courts may afford unrepresented parties greater leniency, "*pro se* litigants are not immune from Rule 11 sanctions," *Ferguson v. Comm'r of Tax & Fin.*, 739 F. App'x 19, 22 (2d Cir. 2018); *see also Ginther v. Provident Life & Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009) (affirming Rule 11 sanctions against *pro se* litigant). Although *pro se* litigants are entitled to special solicitude, they must still comply "with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). Indeed, a court may not decline to impose any sanction for an apparent violation simply because the offending party is unrepresented, as doing so would effectively place all *pro se* litigants beyond Rule 11's reach. *Warren v. Guelker*, 29 F.3d 1386, 1388-90 (9th Cir. 1994) (per curiam); *accord Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996) (vacating denial of Rule 11 sanctions where district court declined to sanction based on

plaintiff's *pro se* status). One "acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, [or] abuse already overloaded court dockets." *Malley v. N.Y. City Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002); *see also Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (Rule 11 applies to attorneys and *pro se* litigants alike "in guarding against frivolous, vexatious, or scurrilous lawsuits"). Consistent with these principles, courts have not hesitated to impose substantial sanctions on *pro se* parties, including monetary awards, *Sassower v. Field*, 973 F.2d 75, 79-81 (2d Cir. 1992) (affirming approximately $93,350 in fees and expenses against *pro se* plaintiffs), and dismissal with prejudice, *Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229, 253-57 (E.D.N.Y. 2014) (dismissal with prejudice, full fee award, and filing injunction against *pro se* plaintiff who ignored prior warning).

Chan's complaint seeks $10,000,000 in damages against Wizards for allegedly infringing his copyright by publishing works containing or referencing weresharks. Dkt. 1. Before bringing a claim seeking payment of $10,000,000, Chan was required to conduct basic research to confirm he had accurately identified the party responsible for the alleged infringements. At the very least, that required the use of basic resources like Google and Wikipedia to confirm whether Wizards had published any of the allegedly infringing works, or that D&D had not referenced weresharks before 2016. Chan's Complaint does not, however, contain an allegation that Wizards actually copied his works. Nor does it even acknowledge that Wizards' own published works referencing weresharks predate his own work.[7]

Nor, as set out in the 12(b)(6) Motion, Dkt. 14, did Chan allege any conduct by Wizards. Indeed, Exhibit F to the Complaint ***expressly*** states that the *Pirate Campaign Compendium (5e) Revised* was published by Legendary Games, not Wizards.

[7] It does, however, allege that he "began to research the internet to see if anyone had taken [his] idea." Dkt. 1, p. 3.

Publisher : Legendary Games
Publication date : June 25, 2022
Language : English
Print length : 448 pages
ISBN-10 : 1955320012
ISBN-13 : 978-1955320016
Item Weight : 7.26 pounds
Dimensions : 11 x 8.75 x 1 inches

Basic internet research confirms Chan's lack of an objectively reasonable factual investigation. Chan did not research the publication date of D&D 5e,[8] or whether D&D has featured weresharks since before 2016.[9] Nor did he look at Wikipedia.[10]

It is evident that Chan's research was woefully inadequate. His claims of infringement by Wizards, "Pathfinder," and 5esrd.com are flatly refuted by easily obtained internet searches.

### C. Chan Knew or Should Have Known that his Complaint Was Legally Defective but Nevertheless Filed it with an Improper Motive

Once a court has determined that a filing is frivolous, it may proceed to evaluate whether it was made for an improper purpose. *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (holding that a court must find that a complaint is frivolous before evaluating whether its claims were made for an improper purpose). "A court may infer an improper purpose if, in light of Plaintiffs' conduct during and outside of litigation, a complaint is so baseless as to suggest that there is an ulterior

---

[8] Wikipedia has an entire page dedicated to the various editions of D&D, https://en.wikipedia.org/wiki/Editions_of_Dungeons_%26_Dragons.

[9] Annexed to the Neville Declaration as Exhibits 22 to 29 are the results of basic Google searches of relevant terms (showing Google search results and related links from searches for "wereshark;" "dungeons and dragons wereshark;" "pathfinder dungeons and dragons;" and "pathfinder wereshark"). These results reveal that weresharks are associated with D&D and Pathfinder, that a wereshark appeared in the *Monster Manual II*, that Pathfinder was published by Paizo in 2009, and that the Pathfinder Roleplaying Game Bestiary 4 contained a wereshark in 2013. These searches also provided the Tribality post identified in the Complaint.

[10] Neville Dec., ¶ 43, Ex. 29 (entering "wereshark" into Wikipedia search bar opens the "List of Advanced Dungeons & Dragons 2nd Edition Monsters" page which discusses earlier uses of the wereshark).

motive behind the lawsuit." *An v. Despins*, No. 22-CV-10062 (VEC), 2023 WL 4931832, at *6 (S.D.N.Y. Aug. 2, 2023).

Initially, it seemed Chan genuinely believed he was defending his intellectual property against the right party in the correct manner. However, the basic internet research described above, coupled with an investigation into Chan's prior litigation history suggests that Plaintiff knew or should have known that his allegations against Wizards were not well-founded. Chan is a serial filer of frivolous copyright actions who has had several cases dismissed because he sought to extend copyright protection to his ideas, rather than his expression of those ideas. By now Plaintiff is well aware that he had neither the right idea nor the right adversary.

Moreover, Chan's Complaint in this action repeats the very pleading deficiencies this Court (and the Eastern District) has repeatedly warned Chan against while dismissing his prior claims as frivolous. *See* Memorandum and Order, *Eng v. Baldwin*, Case No. 1:14-cv-01644 (E.D.N.Y. 2014) (noting Chan's initial complaint "attacked [the Defendant's] works for conceptual similarities shared with his own fiction" and Amended Complaint "did not…point to any protectable *expression* of his ideas that [Defendant] appropriated," instead harping on "unprotectable *ideas* that the works have in common"); Memorandum and Order, *Eng v. Captain Blue Hen Comics*, No. 14-CV-3631 ENV LB, 2014 WL 2941280, at *2 (E.D.N.Y. June 30, 2014)[11] (consolidated order dismissing complaints in each of *Captain Blue Hen*, *Radio Comix,* and *Berger*, and dismissing *Captain Blue Hen* because idea of scientists becoming superheroes is not protectible); *id.* at 3 (rejecting claim in *Radio Comix* involving idea of anthropomorphic unicorn); *id.* (finding in *Berger* that Chan failed to allege "a minimum amount of authorship in the form of original literary expression" and that "[n]ames, titles, or other

[11] The district court handling the *Captain Blue Hen Comics* case consolidated it with *Berger* (No. 14-cv-3632) and *Radio Comix* (No 14-cv-3810) for purposes of its Memorandum and Order dismissing the three cases.

short phrases do not meet these requirements");[12] *Eng v. Creators of the Philosoraptor*, Case No. 1:14-cv-04948 (S.D.N.Y. 2014) (same, for anthropomorphic raptor). Here, Chan's assertion of infringement is based on his creation of "an idea for a new type of monster called the wereshark," which he describes as "an anthropomorphic shark" with certain characteristics.[13] Complaint, Paragraph 3. His allegations of infringement amount to nothing more than the claim that Defendants published books containing anthropomorphic sharks.[14] The allegedly infringing depictions of weresharks share no other significant traits with Chan's wereshark.[15] Similar to his prior lawsuits, Chan's Complaint explicitly describes his allegedly infringed work as an idea, which—as other courts have found—should be dismissed as frivolous.[16] And each of those prior decisions placed Chan on specific notice of the impact of those defects.

More, in two of Chan's prior complaints he cavalierly disregarded evidence that other authors' works predated his publication of his own works, as he does here. In *Eng v. Linde*, the court dismissed Chan's complaint in which he alleged he published his idea in 2002, that the defendant had published the same idea on a website reflecting a publication date prior to Chan's initial publication, and that he believed the publication date on the website was false. No. 14-cv-4677-LAP, Dkt. No. 6, at 4 (S.D.N.Y. October 27, 2014). Similarly, in his complaint in *Eng v. Creators of the Philosoraptor*, Chan alleged that his work was first published in 2003 and that the website on which the allegedly infringing work appeared bore a copyright notice dated 2000. No. 14-cv-4677 LAP,

---

[12] Memorandum and Order, *Eng v. Captain Blue Hen Comics*, No. 14-CV-3631 ENV LB, 2014 WL 2941280, at *2 (E.D.N.Y. June 30, 2014) (citing 37 C.F.R. § 202.l(a) and *Ward v. Andrews McMeel Pub., LLC*, 963 F. Supp. 2d 222, 232 (S.D.N.Y. 2013)).

[13] Namely that it becomes stronger when Neptune is in the sky, that it has impenetrable skin, is immune to diseases, can generate electrical fields, and is vulnerable to magnets. None of the allegedly infringing works share these traits.

[14] Some weresharks appearing in some entity's publications allegedly bear the title "chieftain" or are capable of inflicting bludgeoning damage. Combining the wereshark with an adjective does not make it any more protectable. *See* Fn. 12.

[15] Dkt. 14, p. 13-15.

[16] "In May 2016 or June 2016, I created an idea for a new type of monster called a wereshark." Complaint, paragraph 3. In June 2022, Dungeons and Dragons stole my idea in one of their editions of monster manuals." Complaint, paragraph 4. "In May 2016 or June 2016, I created a new idea. I created the wereshark, a monster that was an anthropomorphic shark." Complaint, Section 1. "I wrote the idea in a Word document on June 6, 2016." *Id.* Chan describes his wereshark's immunity to disease and ability to discharge electricity very rare and bizarre ideas.

Dkt. No. 2, at 1 (S.D.N.Y. June 12, 2014). Chan further alleged that he was unable to verify its validity. *Id.*[17] In both of those cases, Chan encountered information suggesting that the publication of an allegedly infringing work predated his first publication of his own work and nevertheless ignored it or suggested it was falsified. Similarly, here Plaintiff alleges that one of the allegedly infringing works bears a time code error "stating that the article was written on 'October 14, 2015'." Complaint at 3.

More, Chan's willingness to reject as false information that contradicts the claims he wishes to make (rather than treating such information as something to research further) is the opposite of the reasonable inquiry required by Rule 11 and is indicative of his bad faith.

### D. <u>The Court Should Strike the Complaint and Award Wizards its Costs Incurred in This Litigation</u>

Once a court decides that Rule 11 has been violated, it must determine the type of sanction to be imposed. *Curtis Mgmt. Grp., Inc. v. Acad. of Motion Picture Arts & Scis.*, 717 F. Supp. 1362, 1372 (S.D. Ind. 1989). Fees incurred in obtaining dismissal of a frivolously filed complaint are an appropriate sanction. *See*, *e.g.*, *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 362 (S.D.N.Y. 2005). And fees are particularly appropriate here, where Chan's claims are not only facially impossible (given the timeline), inherently implausible (given Chan's theory of access), and substantively meritless, but where such claims also repeat the precise legal failings of Chan's previous litigations, and against which courts have repeatedly warned him. *Eng v. Berger*, Case No. 1:14-cv-03632 (E.D.N.Y. 2014); *Eng v. Creators of the Philosoraptor*, Case No. 1:14-cv-04948 (S.D.N.Y. 2014); *Eng v. Linde*, Case No.

[17] In the court's order dismissing the *Philosoraptor* case, the court noted that Plaintiff's complaint appeared to allege that the defendants had a valid copyright for their character, and that the character's publication predated his publication of his book by seven years. The court also observed that claims for copyright infringement had a three-year statute of limitations from the date a plaintiff knows or has reason to know he or she has suffered an injury. *Eng v. Creators of the Philosoraptor*, Case No. 1:14-cv-04948 (S.D.N.Y. 2014).

1:14-cv-04677 (S.D.N.Y. 2014); *Eng v. Radio Comix*, Case No. 1:14-cv-03810 (E.D.N.Y. 2014).[18] While Wizards hoped Chan would have withdrawn his baseless complaint, Plaintiff elected not to take advantage of Rule 11's safe harbor provisions. The Court should thus award Wizards its full costs and expenses[19] incurred from responding to the Complaint, and schedule briefing regarding the amount of such sanctions.

As shown above, this lawsuit is completely unfounded. Chan's factual investigation was either nonexistent or utterly ineffective. Wizards has incurred costs in responding to a complaint that *does not even allege any activity by Wizards.* And substantively, Wizards has incurred costs and attorney fees to explain why the shapeshifting (and speaking) weresharks featured in its and its competitors' products are distinct from Chan's mute, anthropomorphic shark-men. There is no good reason why Wizards should have to defend itself from Chan's patently frivolous claims.

And Chan's litigation history demonstrates that he knows (or objectively should know) his claims are baseless. It also demonstrates that the warnings-without-consequences will not have the deterrent effect Rule 11 requires. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (deterrence is Rule 11's central goal); *see also Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229, 255 (E.D.N.Y. 2014) ("[T]he imposition of sanctions is necessary given [the *pro se* plaintiff's] failure to heed this Court's warnings and his willful disregard of the judicial process."); *Lipin v. Hunt*, 573 F. Supp. 2d 836, 846 (S.D.N.Y. 2008) (filing injunction appropriate where monetary sanctions have not been effective). Indeed, mere dismissal of Chan's frivolous Complaint would be no sanction at all; it is his baseline experience of litigation, and one that has had no utility in deterring his repetition of

[18] These cases are limited to Plaintiff's frivolous copyright suits. Plaintiff's non-copyright lawsuits which were specifically labeled as frivolous include *Eng v. Cushing*, Case No. 1:14-cv-03905 (E.D.N.Y. 2014) (suit against journalist for publishing court documents containing Plaintiff's home address); *Eng v. Pacermonitor.com,* Case No. 1:14-cv-03912 (E.D.N.Y. 2014) (same); *Eng v. Officer X,* Case No. 1:14-cv-04036 (E.D.N.Y. 2014) (suit against police officer for "discriminating against and abusing" the officer's partner). Neville Dec., Ex. 31.

[19] At the outset of this litigation, Wizards was inclined to seek only a nominal monetary sanction against Chan, on the assumption that he was simply a non-habitual *pro se* litigant with a mental health issue. Having learned of not only Chan's extensive history of frivolous litigation but also his virulent and enthusiastic racism, it is no longer so inclined.

his misconduct. Thus, while Chan's Complaint must also be dismissed, Wizards respectfully submits that the Court must go farther and impose monetary sanctions as well.

If the Court indicates a willingness to grant the instant motion and award Wizards its reasonable costs and fees, Wizards is prepared to submit appropriately redacted billing and invoices together with appropriate sponsoring declarations and affidavits to substantiate the amount of fees and costs that should be awarded. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 191-94 (2d Cir. 2008).

### E. Chan Should also Be Ordered to Show Cause Why He Should not Be Required to Obtain Leave of Court Before Filing Further Copyright Actions in This District

Rule 11(c)(4) also expressly contemplates "nonmonetary directives" as an appropriate form of relief particularly if it is "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." In fashioning such a sanction a court may consider whether the wrongdoer has violated Rule 11 before. *Obert v. Republic W. Ins. Co.*, 264 F. Supp. 2d 106, 123 (D.R.I. 2003). Here, Mr. Chan is no stranger to frivolous litigation. He has been warned on six prior occasions against filing frivolous lawsuits, to no avail. Therefore, Wizards asks the Court to sanction Plaintiff by imposing a filing injunction, *Hubbuch v. Cap. One, N.A.*, No. 25-CV-406 (VSB) (RWL), 2026 WL 691261, at *30 (S.D.N.Y. Feb. 10, 2026) (filing injunction warranted against *pro se* litigant where monetary sanction inappropriate), and requiring Chan to show cause as to why he should be allowed to file additional lawsuits without leave of court.

8 U.S.C. § 1651(a) and the Court's inherent power give it the authority to explore this remedy and impose it after Chan has been given adequate notice and opportunity. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (district courts "may not impose a pre-filing injunction on a litigant sua sponte without" notice and opportunity to be heard); *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) ("[u]nder the All Writs Statute, 28 U.S.C. § 1651(a), the court may enjoin vexatious litigation").

Courts in this jurisdiction consider five factors when determining whether to impose a pre-filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d at 24. All of these factors weigh overwhelmingly in favor of issuing an order to show cause as to why this remedy should not be granted.

First, as discussed above, Chan has an expansive history of frivolous, groundless, and vexatious litigation (in his own name or as "Kenneth Eng"), and all twenty-five of his prior suits that have concluded ended with dismissal, either for failure to follow court rules or because they were frivolous. Neville Dec, Ex. 30. Second, Chan has no good faith basis to believe he will prevail against Wizards. Indeed, he has been repeatedly informed that he cannot use the Copyright Act to protect his ideas, only their expression, and his factual contentions are flatly refuted by rudimentary internet searches, demonstrating that they are utterly lacking in support.

Third, although Plaintiff is due special solicitude for his lack of professional legal knowledge and skill, Chan's *pro se* status cannot insulate him from sanctions. A *pro se* plaintiff is not entitled to abuse the judicial system. *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528–29, at n.1, (2d Cir. 2005) (stating that "The [Supreme] Court has not, however, 'suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel,' *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), much less excuse frivolous or vexatious filings by *pro se* litigants"); *see also Horton v. Trans World*

*Airlines Corp.*, 169 F.R.D. 11, 16 (E.D.N.Y. 1996). And fourth, Plaintiff's persistent failure to file meritorious claims, comply with court rules, and pay required fees causes needless expense to parties and unnecessary burden on the courts. Each of the first four factors is satisfied.

And given Chan's history, the fifth factor strongly favors injunctive relief. Chan has ignored ***eight*** judicial warnings, filing three new frivolous suits in 2026 alone (this case, *Chan v. Phipps*, Case No. 1:26-cv-05083 (S.D.N.Y. 2026), and *Chan v. Troma Entertainment*, Case No. 1:26-cv-06960 (S.D.N.Y. 2026).[20] Indeed, Chan's *Troma* filing, along with his refusal to withdraw this action, confirms that the mere threat of sanctions will not be enough to deter further frivolous litigation. To the contrary, an order of dismissal from this Court dismissing Plaintiff's claims may assist Wizards but will doubtlessly result in Plaintiff asserting the same baseless claims against other parties – specifically, Paizo, Tribality, and Legendary Games, none of which should be forced to expend money (as Wizards already has). Indeed, not only would that be unfair to those entities, such a result could generate a public relations backlash from the perception that Wizards, in defending itself, caused harm to smaller companies by directing Chan to them. The only way to prevent that further harm to Wizards is through the requested injunction.

Although a limited filing injunction is a severe sanction, dismissal and reprimand have not dissuaded Chan in the past.[21] *See In re Martin-Trigona*, 9 F.3d 226 (2d Cir. 1993); *De Long v. Hennessey*, 912 F.2d 1144, 1147-48 (9th Cir. 1990) (pre-filing order appropriate where district court makes substantive finding of frivolousness and the order is narrowly tailored to curb the abuses of the particular litigant), *cert. denied*, 111 S. Ct. 562 (1990)). Wizards therefore proposes a pre-filing injunction against further unreviewed *pro se* litigation as the narrowly tailored remedy likely to curb

---

[20] As noted above, Chan alleges that Troma Entertainment was exposed to his anthropomorphic deer, which he dubbed the "pentagra," via the same facially absurd manner by which he alleges Wizards learned of 'his' wereshark. *Chan v. Troma Entertainment,* No. 26 CV 06960 (S.D.N.Y. 2026).

[21] At this stage, there is no need for an injunction requiring pre-filing review of *counseled* claims; the existence of counsel representing Chan would, hopefully, provide the necessary assurance that any claim was non-frivolous.

Chan's abusive conduct, while leaving Chan with access to the courts in the event that he ever suffers legally cognizable harm.

## IV. CONCLUSION

As shown herein, Chan is a serial frivolous litigant whose past and current misconduct cries out for significant sanction. In this case alone, he has sued the wrong party for conduct that could not even theoretically be infringing even had the alleged infringement post-dated Chan's work. Worse, Chan has maintained his claims through and past the Rule 11 safe harbor even after being presented with incontrovertible evidence that D&D incorporated weresharks literally ***decades*** before Chan claims to have 'invented' them. And Chan has done all this despite having been repeatedly warned – by judges in this district and another – that such conduct is frivolous and sanctionable. It is time for the Court to actually impose those sanctions, both to compensate Wizards for the expenses it should never have had to incur and to hopefully prevent Chan from imposing such frivolous claims and significant expenses on other innocent third parties. The motion should be granted.

Dated: September 3, 2026
New York, New York

**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**

By: */s/ Akiva M. Cohen*
Akiva M. Cohen, Esq.
1700 Broadway, 16th Floor
New York, New York 10019
Tel: (212) 400 – 4930
Fax: (866) 221 – 6122
acohen@kusklaw.com
*Attorneys for Defendant Wizards of the Coast, LLC*