**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LAP-SUN CHAN

Plaintiff,

-against-

WIZARDS OF THE COAST LLC

Defendants.

C.A. NO. 1:26-CV-04680-AT-RFT

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR RECONSIDERATION**

# Table of Contents


I. PLAINTIFF'S RULE 41(a)(1)(A)(i) DISMISSAL DID NOT DISPOSE OF THE RULE 11 MOTION .......... 4

II. Plaintiff's Filing Cost Wizards Approximately $70,000, the Precise Harm that Rule 11 and *Safir* are intended to Prevent .......... 6

III. Plaintiff Has Made Clear He Intends to Keep Filing .......... 7

IV. Limiting Plaintiff's future access to the courts is consistent with circuit policy .......... 9

V. FURTHER, AND IN THE ALTERNATIVE, WIZARDS REQUESTS THAT PLAINTIFF BE DIRECTED TO SHOW CAUSE WHY NO INJUNCTION SHOULD ISSUE .......... 10

# Table of Authorities

**Cases**

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ....................7

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)....................2, 4, 5, 6

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525 (2d Cir. 2005) ....................6, 9, 10

*Lawrence v. Richman Grp. of Conn., LLC*, 620 F.3d 153 (2d Cir. 2010) ....................5

*Moates v. Barkley*, 147 F.3d 207 (2d Cir. 1998)....................10

*Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003)....................5

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19 (2d Cir. 1986)....................6, 8, 9

*Virgin Atl. Airways, Ltd. v. Nat'' l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ....................4

**Other Authorities**

All Writs Act....................6

**Rules**

28 U.S.C. § 1651(a) ....................6

Federal Rule of Civil Procedure 60(b) ....................1

Federal Rules of Civil Procedure 11, 41(a)(1)(i) ....................4

Local Civil Rule 6.3....................1

## PRELIMINARY STATEMENT

Defendant Wizards of the Coast LLC ("Wizards") respectfully moves this Court for reconsideration of its order closing this case without considering Wizards' pending motion for sanctions under Rule 11, and/or to clarify the effect of its memo endorsement dated September 21, 2026 (Dkt. 28 (the "Order")), specifically regarding whether the endorsement adjudicated Wizards' pending motion for sanctions under Rule 11, the All Writs Act, and the Court's inherent authority (Dkt. 21 (the "Rule 11 Motion")). If reconsideration is granted, Wizards respectfully asks the Court to restore the Rule 11 Motion to the active docket so that it may be decided. In the alternative, Wizards seeks relief from the Order to the limited extent it terminated the Rule 11 Motion, under Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3.

Wizards does not seek reconsideration of the dismissal of Plaintiff's claims. The Court construed Plaintiff's September 13, 2026 letter as a notice of voluntary dismissal under Rule 41(a)(1)(A)(i), and Wizards accepts that the dismissal is effective and without prejudice by operation of Rule 41(a)(1)(B). Wizards' instant request is separate and distinct. The Order was entered seven days after Plaintiff submitted his letter to the Court but shortly after it was docketed, on a notice that is self-executing and required no response, and before Wizards had submitted a response advising the Court that Wizards intended to continue pursuing its affirmative claims for relief. No party argued, and the Court had no occasion to consider what should become of the fully briefed and unopposed Rule 11 Motion. As Wizards understands the Court's intentions, the Order's direction to "terminate all motions" was a docket-management step incident to closing the case, not a ruling on the Rule 11 Motion.

Controlling Supreme Court authority holds that a Rule 41(a)(1)(i) notice of dismissal "does not deprive a district court of jurisdiction over a Rule 11 motion," because the sanctions inquiry is collateral to the merits and concerns conduct that has already occurred. *Cooter & Gell v. Hartmarx*

*Corp.*, 496 U.S. 384, 396 (1990). As this is Wizards' first, and potentially only, opportunity to raise this issue, it now provides the Court with this authority.

The need for a ruling is not purely academic, nor mooted by Plaintiff's voluntary dismissal. Plaintiff has been warned by courts in this District in eight cases, that continued frivolous filings could result in a pre-filing injunction (Dkt. 23, Exs. 30, 31). Nevertheless, he has continued. In the letter that ended this case he stated that he disagrees his claims are meritless, and in a subsequent email to Wizards' counsel, Plaintiff stated that he believes he is entitled to continue filing suits of this kind. Moving to dismiss this action and for Rule 11 sanctions cost Wizards approximately $70,000.00. If the Rule 11 Motion is left unaddressed, the only lesson Plaintiff will have learned is that a sanctions motion can be defeated by a one-page letter and that he may continue to abuse the court system, regardless of the cost it imposes upon innocent defendants who are a captive audience and must respond.

## PROCEDURAL BACKGROUND

Plaintiff commenced this copyright action on June 3, 2026. Dkt. 1. On July 29, 2026, Wizards served Plaintiff with a detailed and specific pre-motion Rule 11 letter and a copy of its proposed motion in compliance with Rule 11(c)(2). Plaintiff did not respond, nor did he withdraw or amend the complaint during the 21-day safe-harbor period. Wizards accordingly drafted, and on September 3, 2026 filed, the Rule 11 Motion (Dkt. 21) with a supporting declaration and exhibits (Dkt. [22–23]), seeking monetary sanctions against Plaintiff for this filing and a prospective pre-filing injunction. Plaintiff filed no opposition. Wizards' motion to dismiss (Dkt. 15) was likewise pending and without formal opposition by Plaintiff.

Plaintiff did not appear at the court conferences scheduled for September 4, 2026, or September 16, 2026. He later explained that he missed the September 16, 2026, conference because he was on another call.

On September 12, 2026, Plaintiff sent an email to Wizards' counsel in which he stated that "while [he] sent frivolous lawsuits over a decade ago, the instant case is actually serious," and that "[his] intellectual property is more important to [him] than anything." If this Court grants reconsideration, Wizards will produce the email with an appropriate sponsoring declaration, but it is prevented from doing so here by Local Civil Rule 6.3.

By letter dated September 13, 2026, and received by the Pro Se Office on September 14, 2026 (Dkt. 27), Plaintiff asked that the case be dismissed, citing "health problems and my full-time job." He added: "For the record, I disagree with opposing counsel's statements that my argument is meritless. However, I do not have the time or energy to handle this lawsuit while working a full-time job." *Id.*

On September 21, 2026, the Court entered the Order, construing Plaintiff's letter as a notice of voluntary dismissal under Rule 41(a)(1)(A)(i), stating that the dismissal is without prejudice under Rule 41(a)(1)(B), and directing the Clerk "to terminate all motions and close this case." Dkt. 28. The Court did not call for a response to Plaintiff's letter, and none had yet been filed. Wizards' counsel had prepared a response to the September 13, 2026 letter and was in the process of finalizing and submitting its response upon returning to the office from Yom Kippur, just before the Order was issued. The Order does not address the Rule 11 Motion, or the Court's authority to decide a sanctions motion following a voluntary dismissal. This motion is timely filed within fourteen days of entry of the Order. Local Civ. R. 6.3.

## LEGAL STANDARD

Reconsideration is warranted where the movant identifies "controlling decisions or data that the court overlooked [and] that might reasonably be expected to alter conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995). It is likewise available to "correct clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992).

This motion rests on a single legal proposition that the Order did not address: that a voluntary dismissal does not dispose of a pending Rule 11 motion. It does not depend on any factual submission. The fee figure and the email described below are matters Wizards will establish by declaration on the Rule 11 Motion itself, once restored, and are described here only so the Court can assess the stakes of leaving that motion undecided.

**ARGUMENT**

**I. PLAINTIFF'S RULE 41(A)(1)(A)(I) DISMISSAL DID NOT DISPOSE OF THE RULE 11 MOTION**

"District courts may enforce Rule 11 even after plaintiff has filed notice of dismissal under rule permitting dismissal by stipulation." *See* Federal Rules of Civil Procedure 11, 41(a)(1)(i); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). *Cooter & Gell* arose on facts materially identical to this case. There the plaintiff filed a notice of voluntary dismissal under what was then Rule 41(a)(1)(i) while the defendant's Rule 11 motion was pending. 496 U.S. at 388–89. The Supreme Court held that the dismissal did not divest the district court of jurisdiction to decide the sanctions motion: "A voluntary Rule 41(a)(1)(i) dismissal does not deprive a district court of jurisdiction over a Rule 11 motion." *Id.* at 395. The Court explained that a Rule 11 determination "does not signify a district court's assessment of the legal merits of the complaint," but instead addresses whether the litigant abused the judicial process in filing it. *Id.* at 396. Because that question concerns conduct already completed, it survives the termination of the underlying

action: "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* The Court expressly rejected the argument that a plaintiff can moot a sanctions motion by dismissing, observing that such a rule would leave the defendant to bear the cost of a frivolous filing and would deprive the district court of its ability to deter abuse. *Id.* at 397–98.

Because a Rule 41(a)(1)(A)(i) notice is self-executing and requires no judicial action, the court had no occasion to consider what should become of the pending motion, and the termination should not be read as a ruling on it. Wizards therefore respectfully requests the Court to clarify that the Rule 11 Motion was not adjudicated by the Order and to restore it to the active docket; to the extent the Order was intended as a denial, Wizards asks that it be reconsidered on the authority of *Cooter & Gell.*

Although courts can be reluctant to grant a Rule 11 motion that is filed after the challenged pleading has been dismissed, any such timing concern is absent here. Indeed, the Second Circuit has vacated sanctions where the Rule 11 motion was served **after** the challenged pleading had been effectively dismissed, reasoning that the safe harbor "functions as a practical time limit" and that a party "cannot delay serving its Rule 11 motion until after conclusion of the case." *Lawrence v. Richman Grp. of Conn., LLC*, 620 F.3d 153, 156, 158–59 (2d Cir. 2010) (quoting *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003), and Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).). Here, Wizards served its Rule 11 letter on July 28, 2026. Plaintiff let the 21-day period lapse without withdrawing the complaint, and Wizards filed the Rule 11 Motion on September 3, 2026, all before Plaintiff's September 13 letter. Indeed, neither Wizards nor the Court received any communication or contact from the Plaintiff until after he had already failed to attend the September 4 Court-ordered status conference, on September 4, 2026. Plaintiff had every

opportunity to avoid sanctions by withdrawing his complaint within the 21-day period (which was specified in Wizards' July 28 letter). Plaintiff declined and instead waited until after Wizards had briefed two motions and appeared at two conferences, which he skipped, before deciding he lacked the "time or energy" to proceed. That is the exact sequence in *Cooter & Gell*, where the Court ruled a plaintiff could not escape sanctions.

The Court's authority to enter a pre-filing injunction likewise survives dismissal. That authority rests on the All Writs Act, 28 U.S.C. § 1651(a), and the Court's inherent power to protect its docket, neither of which depends on the continued pendency of the underlying case. *See Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23–24 (2d Cir. 1986); *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528–29 (2d Cir. 2005).

## II. PLAINTIFF'S FILING COST WIZARDS APPROXIMATELY $70,000, THE PRECISE HARM THAT RULE 11 AND *SAFIR* ARE INTENDED TO PREVENT

Wizards has now tallied what it cost to respond to this case: approximately $70,000.00 in attorneys' fees, incurred from reviewing and responding to the complaint; preparing and serving the Rule 11 safe-harbor letter which Plaintiff ignored; briefing the motion to dismiss and the Rule 11 Motion; preparing for and attending two conferences at which Plaintiff did not appear; and responding to Plaintiff's eleventh-hour request to dismiss. Upon rehearing, Wizards will substantiate that figure with contemporaneous billing records on the restored Rule 11 Motion. This is money Wizards has no reasonable expectation of being remunerated for, although none of that expense would have been incurred had Plaintiff conducted the minimal pre-filing inquiry required by Rule 11(b), and much of the expense  could have been avoided had Plaintiff withdrawn his complaint during the safe-harbor period instead of once he had been served with the actual motion. That figure matters for two independent reasons. First, it supports an award of fees as a sanction. Rule 11(c)(4) authorizes, "if imposed on motion and warranted for effective deterrence, an order directing

payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Effective deterrence is the operative question, and the record on that question is one-sided: a litigant undeterred by five prior judicial warnings is unlikely to be deterred by a sixth. A monetary sanction tied to the actual cost of his conduct is the least that is warranted, and the Court may also award fees under its inherent authority upon a finding of bad faith or where the party has acted vexatiously or wantonly. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

Second, and more fundamentally, the figure quantifies the fourth *Safir* factor set forth by the Second Circuit: whether the litigant "has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel." 792 F.2d at 24. Although Wizards has the financial capacity to absorb this one-time cost, not every target of Plaintiff's filings will be similarly well-resourced. The actions Plaintiff has filed and continues to file, *see Chan v. Shutterstock* (S.D.N.Y. 2026), Docket Number: 1:26-cv-07138 (August 21st, 2026); *Chan v. Troma Entertainment* (S.D.N.Y. 2026), Docket Number: 1:26-cv-06960 (August 14th, 2026); *Chan v. Phipps* (S.D.N.Y. 2026), Docket Number: 1:26-cv-05083 (June 12th, 2026), impose the same burden on each defendant he names, and each defendant must decide whether to spend tens of thousands of dollars defending a meritless claim or pay a nuisance settlement to avoid it. That dynamic, in which the cost of defense rather than the merit of the claim drives the outcome, is exactly what Rule 11 and the Court's inherent authority are intended to prevent. Wizards' primary concern is not recouping its own fees; it is ensuring that the next defendant (or Wizards itself) does not have to incur such fees.

## III. PLAINTIFF HAS MADE CLEAR HE INTENDS TO KEEP FILING

If there were any question whether lesser sanctions here might suffice, Plaintiff has answered it doubly. In the very letter by which he dismissed this case, Plaintiff told the Court that "for the record" he disagrees that his claims are meritless, and that he is discontinuing only because he lacks the "time or energy" to litigate while employed. Dkt. 27. That is not a litigant who has recognized a

problem; it is a litigant who has paused. As mentioned previously, around the same period in which Plaintiff represented to this Court and Wizards' counsel that he was not able to continue this action, Plaintiff commenced 3 additional copyright actions in this District with an additional submission made by Plaintiff as late as August 17. Plaintiff's suggestion that he was too unwell or too busy to continue his litigation against Wizards is belied by the fact that he continued to file similar actions even after Wizards Rule 11 letter was sent.[1] Allowing Plaintiff off the hook without consequence for the frivolous filing in this action would only incentivize him to try again later.

Indeed, after filing the September 13 letter, Plaintiff wrote to Wizards' counsel that "while [he] sent frivolous lawsuits over a decade ago, the instant case is actually serious," and "[his] intellectual property is more important to [him] than anything." Plaintiff's implicit intention appears to be to continue filing these claims against unsuspecting defendants whenever he deems fit. Wizards will submit that email on the restored Rule 11 Motion.

Plaintiff's statements bear directly on the second and fifth *Safir* factors—namely whether the litigant's motive in pursuing the litigation was in objective good faith expectation of prevailing, and whether other sanctions would be adequate to protect the courts and other parties. With respect to the second factor, the statements reflect a litigant who views the filing of suits as a means of lawfare, untethered to any assessment of whether a particular claim has merit. *See Safir*, 792 F.2d at 24. And the statements bear decisively on the fifth factor because they confirm that Plaintiff has received and understood his prior warnings intends to proceed anyway. *Id.* Warnings have not yet deterred Plaintiff's frivolous conduct; stronger measures are required. Plaintiff's own emails confirm this,

[1] Moreover, during the very period in which he represented to this Court that he was too unwell and too busy to litigate this action, on September 12, 2026, Plaintiff sent Wizards' counsel three detailed, substantive emails. The next day, he dated a one-page letter to the Court stating that he lacked "the time or energy to handle this lawsuit." Dkt. 27. A litigant who composes three detailed emails defending the merits of his claim, requesting additional materials from opposing counsel, and promising continued engagement is not a litigant who lacks the energy to litigate. The further proliferation of Plaintiff's quixotic litigation efforts does not paint the picture of a plaintiff pressed for time or lacking energy.

wherein Plaintiff described his general practice when opposing attorneys contact him of not responding "except by taking legal action in court."

## IV. LIMITING PLAINTIFF'S FUTURE ACCESS TO THE COURTS IS CONSISTENT WITH CIRCUIT POLICY

In deciding whether to restrict a litigant's future access to the courts, the Second Circuit directs district courts to consider the *Safir* factors, several of which are discussed above: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive, including whether he has an objective good-faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or posed an unnecessary burden on the courts; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Safir*, 792 F.2d at 24; *Iwachiw*, 396 F.3d at 528. Every factor favors an injunction here.

Plaintiff's history of vexatious and duplicative litigation is documented in the Rule 11 Motion and its exhibits (Dkt. 21, 23), and has drawn at least five express judicial warnings in eight cases (Dkt. 23, Exs. 30, 31). His motive, as demonstrated by his correspondence with Wizards' counsel and the Court, is not an objective good-faith expectation of prevailing on any particular claim but a belief that he is entitled to keep filing. He proceeds pro se (without the filter of a licensed attorney signing off on his claims) and has shown no willingness to conform to the rules because he ignores safe-harbor provisions and refuses to appear for court-ordered appearances. Wizards' counsel cannot be so flippant with this Court's directives; counsel must appear for every conference and respond to every frivolous filing, billing at rates acceptable for attorneys who practice before this Court. This is not free labor provided to Wizards; it is a professional service Wizards must incur and pay for through no choice or action of their own. And the inadequacy of other sanctions is established not merely by the failure of the prior warnings to restrain Plaintiff's conduct, but also by

Plaintiff's affirmative statement that he views his claims as meritorious, leaving open the possibility that Plaintiff will try again.

## V. WIZARDS REQUESTS THAT PLAINTIFF BE DIRECTED TO SHOW CAUSE WHY NO INJUNCTION SHOULD ISSUE

A pre-filing injunction may not issue without notice to Plaintiff and an opportunity to be heard. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998); *Iwachiw,* 396 F.3d at 529. Plaintiff should be on notice of the possibility of such a ruling because he received and acknowledged the Rule 11 Motion. Nevertheless, and in the alternative, Wizards asks that the Court direct Plaintiff to show cause, by a date certain, why a pre-filing injunction should not issue. If Plaintiff continues his pattern of not responding, Wizards requests that the Court deem the Rule 11 Motion fully submitted and rule thereupon as the Court will.

Finally, because Plaintiff signs his filings "Lap-Sun Chan (aka Kenneth Eng)," Dkt. 27, any pre-filing injunction should by its terms apply to filings made under either name or any variant that the individual Plaintiff in this case chooses as his *nom de guerre*.

## CONCLUSION

For the foregoing reasons, Wizards respectfully requests that the Court: (1) clarify that the Order's termination of Dkt. 21 was administrative and did not adjudicate the Rule 11 Motion, or, to the extent necessary, grant relief from the Order to that extent under Rule 60(b) and Local Civil Rule 6.3; (2) restore the Rule 11 Motion to the active docket; (3) grant Wizards leave to supplement the record on that motion with appropriate documentary evidence according to the Court's normal procedures; (4) direct Plaintiff to show cause by a date certain why a pre-filing injunction should not issue, and deem the motion submitted if he does not respond; and (5) upon proper notice and an opportunity to be heard, enter a pre-filing injunction requiring Plaintiff, under any name, to obtain

leave of Court before filing any new action asserting copyright claims in this District, and grant such other and further relief as the Court deems just and proper. Wizards does not seek any alteration of the dismissal itself.

Dated: October 2, 2026
New York, New York

**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**

By: */s Akiva M. Cohen*
Akiva M. Cohen, Esq.
1700 Broadway, 16th Floor
New York, New York 10019
Tel: (212) 400 – 4930
Fax: (866) 221 – 6122
acohen@kusklaw.com
*Attorneys for Defendant Wizards of the Coast, LLC*

## CERTIFICATE OF COMPLIANCE

I certify, pursuant to LCR 7.1(c), that this memorandum of law complies with the applicable word-count limit. As measured by the word-processing system used to prepare it, and excluding the caption, table of contents, table of authorities, signature block, and this certification, this memorandum contains 3,491 words, which is within the 3,500-word limit.

By: *<u>/s Akiva M. Cohen</u>*
Akiva M. Cohen